[Civ. No. 4089.  Second Appellate District, Division Two.—February 23, 1923.]

E. E. TRIPP, Petitioner, v. SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF LOS ANGELES, Respondent.

[1] DIVORCE — PROPERTY SETTLEMENT — INCORPORATION IN DECREE— EFFECT OF STIPULATION.—Where an agreement settling property rights pending an action for divorce contained a formal stipulation that if it was approved by the court it should be embodied in the decree in the action, the incorporation of the agreement in

the decree made all of its terms enforceable as mandates of the court, notwithstanding the absence of any express provision in the decree directing the payment by the husband to the wife of the money provided in the agreement.

[2] Id.—Contempt—Divorce—Default of Husband—Allowance of Payment in Installments—Jurisdiction.—The superior court has jurisdiction to allow a husband adjudged guilty of contempt for failure to make a payment of a sum of money to his divorced wife as provided by the decree to purge himself of the contempt by payment of the amount in monthly installments.

APPLICATION for a Writ of Certiorari to review an order of the Superior Court of Los Angeles County adjudging the applicant guilty of contempt of court. Denied.

The facts are stated in the opinion of the court.

D. Joseph Coyne for Petitioner.

Griffith Jones and John J. Craig for Respondent.

WORKS, J.—Petitioner's wife sued him for divorce and procured an interlocutory decree against him. Among other things the decree contained the following: "The court further finds that prior to the commencement of this action . . . the parties hereto executed a certain property settlement and agreement, which should be and is hereby incorporated in and made part of this decree, and is in words and figures as follows, to-wit'': The agreement was then set out in full. In part, it described several parcels of real property, all of which was stated to be the community property of the spouses, and by it the husband agreed to convey to the wife all his interest in the property. The instrument also contained the following: "It is further agreed and understood by and between the parties hereto that there is a total indebtedness against the Orange County property described above of approximately nine hundred ($900.00) dollars, and said [husband] agrees with said [wife] to make said payments as the same may become due to and for the use and benefit of the said

---

2. Contempt proceedings to enforce payment of alimony, note, 137 Am. St. Rep. 875.

[wife]. . . . That said [husband] has herewith made conveyances of all his said property as set forth above, the same to be held subject to the approval of this property settlement by the court, and to be delivered when said agreement is so approved by the court and embodied in the decree of said action." As partially explaining this reference to "the court" and as showing more specifically what kind of decree was in the minds of the parties, it is to be observed that recitals in the preamble to the agreement were that "said [wife] has filed suit against [the husband] for divorce" and "said [husband] has had competent advice and been advised that his said wife has a good and meritorious cause of action, and he having no meritorious defense thereto, it is mutually agreed and understood," etc. After setting forth the property agreement the interlocutory decree ordered "that said plaintiff shall take all of the community property as set forth in said property settlement and agreement as aforesaid." In due time the court made its final decree of divorce between the parties. In that decree, also, the property agreement was set forth in full, being preceded by the statement: "The court further says that prior to the commencement of this action . . . the parties hereto executed a said [*sic*] property settlement and agreement which should be and hereby is incorporated in and made a part of this decree, and is in words and figures as follows, to wit":

At a time long after the final decree of divorce had become final respondent court, upon the application of the wife, issued its order to petitioner to show cause why he should not be punished as for a contempt of court in having failed to pay a balance of the $900 mentioned in the property agreement. After due hearing under the order to show cause, respondent found that petitioner, at all times after the entry of the interlocutory and final decrees in the divorce action, had full knowledge of their existence; that at all times he was financially able to pay the $900, but that he had neglected and refused to pay and never had paid the sum of $683.75 thereof. Respondent thereupon made its order "that the defendant is guilty of contempt of court, by reason of his failing to make the payments hereinbefore specified, and that it is hereby ordered that said defendant may purge himself of said

contempt by paying to the complainant said $683.75 in sums not less than $50 per month, commencing March 1, 1922, and that should said defendant not avail himself of this opportunity of purging himself of said contempt that he then may be cited to the court to be punished for said contempt hereinbefore mentioned.'' These matters are all before us upon an order to show cause why a writ of review should not issue against respondent for the purpose of reviewing the order thus made in the contempt proceeding.

[1] It is contended that the decrees in the divorce action did not order petitioner to pay the $900 mentioned in the property agreement. It is true that neither of the decrees contained such an order in express terms, but we are nevertheless of the opinion that petitioner's contention cannot be upheld. The agreement recited the fact that a divorce action was pending between the parties and contained a formal stipulation that it should be subject to the approval of the court and that, when so approved, it should be embodied in the decree in the divorce action. This stipulation surely contemplated that the terms of the agreement, when it should be embodied in the decree, should have the compelling power of the court behind its every covenant. The court had full power to deal with the matters covered by the agreement and to render its judgment thereon, at least to the extent of making proper provision for the support and maintenance of the wife, provided that it were first ascertained that petitioner was guilty of the charges made against him in the divorce action. Notwithstanding this power of the court, the parties undertook to stipulate a decree as to property matters, subject under the law as well as under the agreement to the approval of the court. This approval was evidenced by the fact that the agreement was incorporated in terms in both the interlocutory and final decrees, preceded in each instance by the statement that the agreement was made part of the decree. Under these circumstances we are convinced that the terms of the agreement, except in so far as they were executed either before or at the time of the interlocutory decree, became enforceable as mandates of the court. Petitioner cites *Milckovich* v. *Quinn,* 40 Cal. App. 537 [181 Pac. 256], and *McCahan* v. *McCahan,* 47 Cal. App. 173 [190 Pac. 458], as opposed to

this view, but we find nothing in either case which touches the question, except, in fact, that the first named case seems to support, rather than to oppose, our conclusion. The court did, therefore, order petitioner to pay the $900.

Petitioner insists that the order requiring him to pay $683.75, he not having been ordered to make that payment as a fine for the contempt of which respondent found him guilty, was in effect but a modification of the order contained in both the interlocutory and final decrees of divorce and requiring the payment of $900, and authorities are cited to the point that such a modification was not proper under all the circumstances here present. It will not be necessary for us to consider this specific point. The order in question here was responsive to an order requiring petitioner to show cause why he should not be punished as for a contempt of court. We are, therefore, called upon to determine, at least in the first instance, whether respondent had jurisdiction in its order in the contempt proceeding to require petitioner to pay the sum of $683.75.

[2] It is plain from the order sought to be reviewed that respondent administered no punishment for the contempt of which it adjudged petitioner guilty. Instead of fixing a punishment, respondent by its order decreed that petitioner might purge himself of his offense against the dignity of the court by the payment of the $683.75 at the rate of not less than $50 per month. Unquestionably the court had jurisdiction to allow petitioner to purge himself of his contempt by paying the $683.75 at once and in full (13 C. J. 94). We are cited to no authority showing that respondent was not empowered to allow petitioner to pay this total sum on the installment plan, and as a mere matter of jurisdiction we know of no reason why that course was improper. Such a course was undoubtedly an unusual one. It is strange that a court, after finding an individual in contempt for a failure to pay a total sum due under one of its judgments, should allow him, and that without punishing him for the contempt, to pay the amount in installments. That course in this instance placed petitioner in a better position than he had occupied prior to the order adjudging him in contempt, and it in effect presented him with a reward for his disobedience of

the court's judgment. That, however, has nothing to do with the question whether respondent had *jurisdiction* to allow the payment in installments. We are of the opinion that the jurisdiction existed.

The application for the writ is denied.

Finlayson, P. J., and Craig, J., concurred.