[S. F. No. 16661.   In Bank.   Apr. 2, 1942.]

GERTRUDE E. PLUMMER, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Albert Picard and Francis McCarty for Petitioner.

Phillip Barnett for Respondents.

CARTER, J.—Petitioner has' applied for a writ of mandate to compel the respondent superior court to hear and determine a contempt proceeding instituted by her against her former husband.

On October 19, 1937, petitioner commenced an action for divorce against her husband, C. T. Plummer, and on the same day the parties entered into an agreement providing for the settlement of their property rights, and for stipulated monthly payments to. be made by petitioner's husband to her for her support and maintenance, and forever releasing him from any other claims. The agreement recited that the parties had separated about a month before. It provided that Plummer was to pay premiums on a life insurance policy in which petitioner was to have rights "Until the remarriage of first party (petitioner) . . .;" that the monthly payments were for support and maintenance of petitioner and were to continue until she died or remarried; and that neither of the parties should have any claim against the other except as set forth in the agreement and each releases the other from contributing to "her or his maintenance as a wife or husband, as the case may be, during their natural lives . . .;" that it is the intention of the parties to "forever adjust all property rights growing out of said marriage, including the right to support and maintenance." Nothing is expressly stated with reference to the agreement being subject to the approval of the court, its being made a part of a divorce decree, or that a divorce action was contemplated. Petitioner alleged in her complaint in the divorce action: "That prior to the commencement of this action, by a written agreement, plaintiff and defendant settled and adjusted between themselves their respective rights in and to all community property of said marriage, which said settlement plaintiff hereby requests the court to approve and confirm." She prayed for the approval and confirmation of the agreement. The interlocutory decree of divorce entered on November 22, 1937, provided: "It is further ordered, adjudged and decreed that that certain contract dated as of the 19th day of October, 1937, a copy of which is annexed hereto and made a part hereof, wherein the parties hereto agree upon a division of all of their community property be and it is hereby ratified, approved and confirmed." The final decree stated "that that certain contract dated as of the 19th day of October, 1937, a copy of which is annexed to the Interlocutory Decree of Divorce herein, wherein the parties hereto

agree upon a division of all of their community property, be and it is hereby ratified, approved and confirmed.'' Petitioner alleges in her petition and it is not denied that the agreement was made in contemplation of divorce.

Petitioner's husband failing to make the payments as provided in the agreement, she instituted proceedings to have him declared in contempt for such failure. The court issued an order to show cause but dismissed the same at the time fixed for hearing and refused to hear the same on the ground that it was without jurisdiction because there was no order of the court that the payments be made. The issue presented is whether the provision for the monthly payments for support of petitioner is merely a part of a contract between the parties and enforceable only by ordinary contract remedies, or is an operative part of the divorce decrees to the extent that it may be enforced by contempt proceedings.

The problem was first presented for solution by an appellate court of this state in *Tripp* v. *Superior Court,* 61 Cal. App. 64 [214 Pac. 252], where the agreement was made after the divorce action was commenced and recited its commencement and indicated that the agreement was subject to approval of the court. The property rights of the parties were put in issue by the pleadings. The decree stated that the agreement was incorporated therein and it was then set forth in the body of the decree. To the contention that the decree did not order the making of the payments for which provision had been made in the agreement, the court stated at page 67 :

''It is true that neither of the decrees contained such an order in express terms, but we are nevertheless of the opinion that petitioner's contention cannot be upheld. The agreement recited the fact that a divorce action was pending between the parties and contained a formal stipulation that it should be subject to the approval of the court and that, when so approved, it should be embodied in the decree in the divorce action. This stipulation surely contemplated that the terms of the agreement, when it should be embodied in the decree, should have the compelling power of the court behind its every covenant. The court had full power to deal with the matters covered by the agreement and to render its judgment thereon, at least to the extent of making proper provision for the support and maintenance of the wife, provided that it were first ascertained that petitioner was guilty of the charges made against him in the divorce action. Notwithstanding this

power of the court, the parties undertook to stipulate a decree as to property matters, subject under the law as well as under the agreement to the approval of the court. This approval was evidenced by the fact that the agreement was incorporated in terms in both the interlocutory and final decrees, preceded in each instance by the statement that the agreement was made part of the decree. Under these circumstances we are convinced that the terms of the agreement, except in so far as they were executed either before or at the time of the interlocutory decree, became enforceable as mandates of the court." That case was followed by *Andrews* v. *Superior Court*, 103 Cal. App. 360 [284 Pac. 494], where the agreement was made after the divorce action was commenced; the complaint said nothing concerning the agreement. The decree provided that the agreement theretofore entered into was made a part thereof. The court held that was not sufficient to make the agreement an enforceable part of the decree, stating at page 363:

"Before proceeding further it is necessary to determine the legal effect or force of that part of the interlocutory judgment complained of. A close study thereof shows only that a property settlement is made a part and portion of the judgment. The phrases 'heretofore entered into between plaintiff and defendant,' 'and providing for payments to plaintiff of two hundred ($200.00) dollars per month,' and 'and on file in this case,' clearly are matters only of identification of a certain property settlement and in nowise state any order for the payment of any sum. The interlocutory judgment contains no order, decree or judgment for the payment of any sum." In regard to the Tripp case the court said at page 365:

". . . the court, after setting forth the property settlement in full in the interlocutory judgment, ordered in said judgment 'that said plaintiff shall take all of the community property as set forth in said property settlement and agreement as aforesaid.' Therefore that case is not authority for the contention that a mere incorporation by reference of a property settlement (not set forth in any pleading) in an interlocutory judgment of divorce is equivalent to a direct order for payment in accordance with such property settlement." Next was *Ex parte Weiler*, 106 Cal. App. 485 [289 Pac. 645], in which the agreement was made before the divorce action was commenced and said nothing about divorce other than that it was to be referred to in and made a part of any di-

vorce judgment. The complaint asked for an approval of the agreement, and the decree approved it and made it "a part of this decree." The court held that the agreement was enforceable as a part of the decree by contempt proceedings. In *Schnerr* v. *Schnerr*, 128 Cal. App. 363 [17 P. (2d) 749], the agreement was made before the divorce action was commenced and contained no provision that it was to be approved by the court or made a part of a divorce decree. The complaint merely referred to an agreement having been made and the divorce decree approved the agreement. It was held not to be enforceable as part of the decree. In *Baxter* v. *Baxter*, 3 Cal. App. (2d) 676 [40 P. (2d) 536], the agreement was made the same day the action was commenced; it mentioned a possibility of divorce but no suggestion of approval by the court appeared. The complaint did not mention the agreement; it was introduced as an exhibit. The decree approved the agreement and stated that it "is hereby . . . made a part of this . . . decree." The court held that the agreement was not an enforceable part of the decree stating at page 682:

"Where a property settlement agreement contains a provision that it shall not go into effect until it is approved by the court, and is therefore rather in the nature of a stipulation of the parties than a final agreement, and the complaint in a divorce action contains the proper allegations and prayer looking toward the settlement of the property rights of the parties, an order of the court that the terms of the contract be carried out will be implied from the incorporation of the agreement in the decree, either bodily or by reference. (*Tripp* v. *Superior Court*, 61 Cal. App. 64 [214 Pac. 252]; *Ex parte Weiler*, 106 Cal. App. 485 [289 Pac. 645]. But if the agreement is complete in itself, without reference to action by the court, and the plaintiff does not ask for a property settlement, the court does not, by merely approving the settlement or even by incorporating it in the decree, order the performance of the contract." The agreement in *Petry* v. *Superior Court*, 46 Cal. App. (2d) 756, 759 [116 P. (2d) 954], was made after the divorce was commenced, and it was introduced into evidence at a default hearing and a request was made by the plaintiff that it be incorporated into the decree. The decree expressly ordered the performance of the agreement, but the court stated the rule to be:

"The mere approval of a property settlement, with nothing further, is not such an order. (*Miller* v. *Superior Court* [3

Cal. App. (2d) 676 (40 P. (2d) 536)], *supra; Schnerr* v. *Schnerr*, 128 Cal. App. 363 [17 P. (2d) 749].) If an agreement is complete in itself, without reference to action by the court, and the plaintiff does not ask for a property settlement, the court does not, by merely approving the settlement, or even by incorporating it in the decree, order the performance of the contract. (*Andrews* v. *Superior Court*, 103 Cal. App. 360 [284 Pac. 494] ; *De Haven* v. *Superior Court*, 114 Cal. App. 253 [300 Pac. 95].) On the other hand, where a property settlement agreement contains a provision that it shall not go into effect until it is approved by the court, and is therefore rather in the nature of a stipulation of the parties than a final agreement, and the complaint in a divorce action contains the proper allegations and prayer looking toward the settlement of the property rights of the parties, an order of the court that the terms of the contract be carried out will be implied from the incorporation of the agreement in the decree, either bodily or by reference.'' In *Miller* v. *Superior Court*, 9 Cal. (2d) 733 [72 P. (2d) 868], an agreement was made prior to the institution of the divorce action and contained a clause for monthly payments for maintenance. The complaint requested that the agreement be made a part of the decree; the decree approved the agreement and ordered the payment of the money. Finally, in an endeavor to reconcile and rationalize the various rules theretofore announced, this court set forth the controlling principles in *Lazar* v. *Superior Court*, 16 Cal. (2d) 617, 620 [107 P. (2d) 249], as follows:

''If a property settlement agreement is complete in itself and is merely referred to in a divorce decree or approved by the court but not actually made a part of the decree, then the provisions of such agreement cannot be enforced by contempt proceedings. (*Baxter* v. *Baxter*, 3 Cal. App. (2d) 676 [40 P. (2d) 536] ; *Schnerr* v. *Schnerr*, 128 Cal. App. 363 [17 P. (2d) 749].) On the other hand, if, by the language of the agreement itself, it is shown that the intent was to make the agreement a part of a future divorce decree and, if the agreement is actually incorporated in the decree, then such provisions become a part of the order of the court and may be enforced as such.'' ▮ Whatever may have been the rule before the Lazar case, it is now settled that in order to authorize the enforcement of the provisions of a property settlement agreement by a contempt proceeding, the court must order the performance of such provisions.

Applying the foregoing rule to the case at bar we find that, even if it be assumed that the agreement was so incorporated into the decree that an order for compliance therewith could be implied, there is nothing in the agreement which necessarily shows an intent to make it a part of a future divorce decree. Nothing is said therein regarding the approval of the agreement by the court, nor that it should become a part of a subsequent decree. The reference therein to the payments being for maintenance and support, and a release of all other claims for support are wholly consistent with the agreement being in view of separation with no divorce involved. The agreement is complete in itself. However, the divorce decrees do not order or direct either party to do or perform any act or carry out any provision or stipulation provided for in the agreement. The interlocutory decree simply by way of recital states that a copy of the contract "annexed hereto and made a part hereof . . . is hereby ratified, approved and confirmed." The final decree contains a similar recital.

In the Lazar case, *supra*, certain provisions of the agreement were set forth in the decree in *haec verba* following the words "It is ordered, adjudged and decreed" that the acts provided for therein be performed. In other words, the court expressly ordered that such provisions be performed. Such is not the case here, and it cannot be said that it was the intention of either the parties or the court that the provisions of the agreement be made a part of the decrees to the extent they were reduced to a final mandatory judgment, ordering and commanding the performance of certain acts, a failure to perform which would constitute a contempt of court.

The rights of the parties under a mandatory judgment whereby they may be subjected to punishment as contemnors for a violation of its provisions, should not rest upon implication or conjecture, but the language declaring such rights or imposing burdens should be clear, specific and unequivocal so that the parties may not be misled thereby.

Situations may arise where a trial court may be disposed to approve a property settlement agreement in a divorce action, and for the purpose of identifying such agreement, cause the same to be annexed to the interlocutory decree of divorce, but for obvious reasons would refrain from making a mandatory order that the parties be required to perform each and every provision of such agreement or be subjected to a

charge of contempt of court for failure to do so. It is a matter of common knowledge that such agreements often contain provisions which cannot be specifically enforced, and it would be idle for a court to make a mandatory order directing the performance of such provisions. In those cases where it is the intention of the parties and the court to have certain provisions of such an agreement constitute a part of the decree or judgment and made enforceable as such, the court may set forth such provisions in the decree and provide therein that the same be performed. This is the usual practice and when it is followed all doubt as to the effect of such provisions is removed.

No such intention appears from the decrees in the case at bar, and we therefore hold that the provisions of the agreement cannot be enforced by a contempt proceeding.

The peremptory writ of mandate prayed for is denied.

Gibson, C. J., Shenk, J., Curtis, J., Houser, J., and Traynor, J., concurred.

Petitioner's application for a rehearing was denied April 30, 1942. Edmonds, J., voted for a rehearing.