[Civ. No. 14216.   First Dist., Div. One.   Aug. 17, 1949.]

CARL V. SHOGREN, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Hugh K. McKevitt, Jack M. Howard and Thomas C. Vassar for Petitioner.

Wallace & Parker and Henderson R. Wallace for Respondents.

BRAY, J.—Petitioner seeks a writ of prohibition to restrain the superior court from hearing an order to show cause why he should not be held in contempt for failing to pay alimony.

The main question involved is whether the provisions of a property settlement agreement entered into between petitioner and his wife were made an enforceable portion of the interlocutory decree in the divorce action between them.

## FACTS

Petitioner and his wife entered into a property settlement agreement which, among other things, provided that petitioner would pay her the sum of $150 per month for her support and maintenance. The agreement provided that if an action of divorce "be instituted by one party hereto against the other, then and in that event this agreement, subject to the approval of the Court having jurisdiction of the subject matter of the divorce action, may be incorporated into any decree of divorce which said Court may hereafter render." Thereafter she brought suit against him for divorce, and on March 17, 1938, obtained an interlocutory decree of divorce on the ground of extreme cruelty.

The decree contained no direct order for the payment of support. The only reference to the property settlement is as follows: "IT IS FURTHER ORDERED, ADJUDGED and DECREED that the certain property settlement agreement entered into between the parties hereto on the 5th day of March, 1938, a copy of which property settlement agreement is on file herein be and the same is hereby ratified and made a part of this decree as though the same were fully herein set forth." There is no filing mark on the agreement, but it appears to be attached by staples to the decree. A final decree of divorce was entered March 23, 1939, in which the reference to the agreement is in substantially the same language as that in the interlocutory decree.

On April 6, 1949, the former wife obtained from the superior court an order directing petitioner to show cause on April 14th, why he should not be adjudged in contempt for "wilfully disobeying" the orders in the interlocutory and final decrees for payment to her of support. Her affidavit shows that petitioner is some $13,200 in arrears.

WAS THE AGREEMENT SUFFICIENTLY INCORPORATED INTO THE DECREES?

Although some of the early decisions in this state indicated that when an agreement had been incorporated in a divorce decree, the wife could enforce the provisions for periodic payments either by contempt proceedings or by independent action on the agreement, it is now well settled that where the agreement for payment of support is actually incorporated in the decree, it is merged therein, has no longer any independent force, and is enforceable only by proceedings on the decree, "including such aids as execution, contempt, and other enforcement process of the court together with an action on the decree." (*Hough* v. *Hough,* 26 Cal.2d 605, 614 [160 P.2d 15].) *Howarth* v. *Howarth,* 81 Cal.App.2d 266 [183 P.2d 670], and *Price* v. *Price,* 85 Cal.App.2d 732 [194 P.2d 101], are to the same effect. The Hough case is the leading one on the subject. It quotes from *Holloway* v. *Holloway,* 130 Ohio St. 214 [198 N.E. 579] as follows (p. 609): " 'A decree which incorporates an agreement is a decree of court nevertheless, and as soon as incorporated into the decree *the separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such. Once the contract is merged into the decree, the value attaching to the separation agreement is only historical.'* (Emphasis added.)" "Taken together the *Hough case* and the principal case establish the further principle that the obligations imposed by the agreement are enforceable solely by either an action on the decree, or by an action on the agreement, depending on the decree of the court tested by the standard established in the principal case." (21 So.Cal.L.Rev. 205.)

Considerable confusion seems to exist among the authorities as to just what constitutes an incorporation of the agreement into the decree sufficiently to merge the agreement with the decree, so as to make it enforceable by proceedings on the decree rather than on the agreement, that is, the *standard of test* mentioned in the above quoted portion of the Southern California Law Review. No clear cut statement has been made as to the test to be applied. However, an examination of the authorities shows that, although not clearly stated in any of them, with the possible exception of *Price* v. *Price, supra* (85 Cal.App.2d 732), the courts have practically said that to be merged in the decree the agreement must not only

be incorporated therein, but that the decree must actually order the payment of money provided by the agreement.

The first case on the subject was *Tripp* v. *Superior Court*, 61 Cal.App. 64 [214 P. 252], in which the agreement contained a provision that it was to be embodied in any divorce decree that might follow, and then actually was inserted verbatim in the decree. The court held that thereby it was merged in the decree. Then came *Andrews* v. *Superior Court*, 103 Cal.App. 360 [284 P. 494], in which the decree merely adjudged that the property settlement agreement "be, and the same is hereby, made a part and portion of this interlocutory judgment" (p. 362), and it was held that such reference constituted only a matter "of identification of a certain property settlement and in nowise state[s] any order for the payment of any sum." (P. 363.)

Next was *Ex parte Weiler*, 106 Cal.App. 485 [289 P. 645], where the interlocutory decree provided: "It is further ordered, adjudged and decreed that this court does hereby approve and confirm and make a part of this decree the provisions of that certain property settlement agreement made and entered into between the parties hereto and executed by them on the 15th day of May, 1928." (P. 487.) The court held that by this language "What was formerly merely an agreement of the parties became a part of the judgment of the trial court" (p. 488), basing its judgment on the Tripp case, *supra*, in which however, the agreement had actually been inserted in the decree. Then came *Schnerr* v. *Schnerr*, 128 Cal.App. 363 [17 P.2d 749], in which the decree recited that the agreement dated a certain date was "confirmed, ratified and approved" (p. 364) but in no way made a part of the decree. It was there held that the agreement was no part of the decree. It distinguished the Weiler case, *supra*, by saying (p. 367): "There the agreement itself expressly provided that it should be made part of the judgment of divorce, and in accordance therewith plaintiff in her complaint expressly requested the court to approve and confirm said agreement; and pursuant to such request it was expressly declared in both decrees that said agreement was made part thereof; all of which shows a clear intention on the part of the parties themselves as well as the court to place 'the compelling power of the court behind its every covenant' (*Tripp* v. *Superior Court, supra*); while in the present case the agreement contained no such provision, the complaint made no such request, and although the agreement was ratified and confirmed by the

court, neither decree by express provision or otherwise made the agreement a part thereof.''

*Baxter* v. *Baxter,* 3 Cal.App.2d 676 [40 P.2d 536], followed, in which the trial court ''made an order which purported to amend the interlocutory decree by substituting the provisions of the later contract, and entered a final decree of divorce in which it incorporated the second agreement by reference and declared its provisions to be binding. The court did not, however, order the payment of any sums of money, and in view of the pleadings and all the circumstances of the case the amended interlocutory decree, if valid, could not be enforced by the process of the court.'' (P. 685.) It was held that such incorporation was not sufficient to merge the agreement in the decree. The court then summed up the rule in California as follows (although the cases cited by it do not fully support such rule) : ''Where a property settlement agreement contains a provision that it shall not go into effect until it is approved by the court, and is therefore rather in the nature of a stipulation of the parties than a final agreement, and the complaint in a divorce action contains the proper allegations and prayer looking toward the settlement of the property rights of the parties, an order of the court that the terms of the contract be carried out will be implied from the incorporation of the agreement in the decree, either bodily or by reference. (*Tripp* v. *Superior Court,* 61 Cal.App. 64 [214 P. 252] ; *Ex parte Weiler,* 106 Cal.App. 485 [289 P. 645].) But if the agreement is complete in itself, without reference to action by the court, and the plaintiff does not ask for a property settlement, the court does not, by merely approving the settlement or even by incorporating it in the decree, order the performance of the contract. (*Andrews* v. *Superior Court,* 103 Cal.App. 360 [284 P. 494] ; *Schnerr* v. *Schnerr,* 128 Cal. App. 363 [17 P.2d 749] ; *De Haven* v. *Superior Court, supra* [114 Cal.App. 253 (300 P. 95)].)''

Next was *Petry* v. *Superior Court,* 46 Cal.App.2d 756 [116 P.2d 954], where, after the divorce was commenced, a property settlement agreement was entered into. Plaintiff, at a default hearing, requested that it be incorporated in the decree. The decree provided that it was approved and '' 'made a part of this decree in all its terms, provisions and conditions.

'' '*It is further ordered that the plaintiff and defendant fully perform their respective rights and duties vested in and imposed upon them under and by virtue of the property settlement agreement* heretofore made on the 22nd day of June,

1935, which said property settlement agreement has been exhibited during the course of the hearing had in this matter, introduced into evidence, and incorporated into this order.' '' (P. 758.) It was held that that was a sufficient incorporation to merge the agreement into the decree.

In *Miller* v. *Superior Court,* 9 Cal.2d 733 [72 P.2d 868], the agreement was made a part of the decree by reference only, but the court made an order that defendant pay plaintiff for her maintenance the sum of $150 per month "pursuant to said agreement." (P. 735.) It was held that the order of payment was in addition to making the agreement a part of the decree by reference, and could be enforced by contempt proceedings.

Then came *Lazar* v. *Superior Court,* 16 Cal.2d 617 [107 P. 2d 249], in which, in the interlocutory decree, the property settlement agreement was approved and made a part of the decree, and certain provisions of the agreement, including the clause providing for monthly payments to the wife, were set out in full. It was held that this was sufficient to allow enforcement by the contempt proceedings. The court expressed the rule in an entirely different manner from the way it was expressed in the above quotation from *Baxter* v. *Baxter,* (p. 470 hereof). It said (p. 620): "If a property settlement agreement is complete in itself and is merely referred to in a divorce decree or approved by the court but not actually made a part of the decree, then the provisions of such agreement cannot be enforced by contempt proceedings. (*Baxter* v. *Baxter,* 3 Cal.App.2d 676 [40 P.2d 536]; *Schnerr* v. *Schnerr,* 128 Cal.App. 363 [17 P.2d 749].) On the other hand, if, by the language of the agreement itself, it is shown that the intent was to make the agreement a part of a future divorce decree and, if the agreement is actually incorporated in .the decree, then such provisions become a part of the order of the court and may be enforced as such. (*Tripp* v. *Superior Court,* 61 Cal.App. 64 [214 P. 252]; *Ex parte Weiler,* 106 Cal.App. 485 [289 P. 645]; *Miller* v. *Superior Court,* 9 Cal.2d 733 [72 P.2d 868].)''

Following the Lazar case came *Plummer* v. *Superior Court,* 20 Cal.2d 158 [124 P.2d 5], in which the property settlement agreement was ratified, approved and confirmed in the decree and was annexed to the interlocutory decree. The court reviewed all of the above cases, and then said (p. 163): "Whatever may have been the rule before the Lazar case, it is now settled that in order to authorize the enforcement of the pro-

visions of a property settlement agreement by a contempt proceeding, the court must order the performance of such provisions.'' It then held that because of the absence of an order for the payment of the moneys specified in the agreement, contempt proceedings would not lie.

*Tieso* v. *Tieso*, 67 Cal.App.2d 872 [155 P.2d 659], was an action brought to reform a property settlement agreement which had been ratified in the interlocutory decree but not incorporated therein. In holding that it was not a part of the decree the court said (p. 874) : ''Where the decree merely approves the agreement without being in such form as to justify the construction that it orders the performance of its terms the only method of enforcing the agreement is by an independent action in contract. [Citing cases]''

The next case was *Hough* v. *Hough, supra* (26 Cal.2d 605). There the interlocutory decree provided for the payment of support to the wife and the performance of some of the other terms of the agreement. ''It closes with the statement that the 'above provisions are in accordance with the property settlement filed herein, which said property settlement is hereby approved by the Court.' '' (P. 607.) In reversing a judgment of the trial court in an action for unpaid support, based upon the agreement, the court held that the agreement was merged in the decree. It approved the rule above quoted from the Lazar case, and then, contrary to the holding in some of the above mentioned cases, stated that, on the question of merger of the agreement into the decree, it was ''not vital'' that the agreement contain a provision that it should be included in the decree.

Following the Hough case came *Howarth* v. *Howarth, supra* (81 Cal.App.2d 266). This was an action on the property settlement agreement. The defense claimed that the agreement had been merged in the interlocutory decree of divorce. The decree merely provided that the agreement ''attached to the complaint on file herein'' was confirmed and approved. The court, upon the authority of the Lazar and Hough cases, held that the agreement had not been merged in the decree because the decree itself imposed no duty or obligation on the husband to pay the support mentioned in the agreement.

Finally came *Price* v. *Price*, 85 Cal.App.2d 732 [194 P.2d 101], which was an action brought upon a property settlement agreement. The exact wording of the divorce decrees in the action which followed the making of the agreement is not set forth. However, the question is stated in the following

language of the opinion (p. 734): "'. . . the complaint, referring to both divorce decrees, states that the agreement 'was, by order of the court, made a part of its decree,' and it is with the import of these words that we are concerned in passing upon the propriety of this judgment on the pleadings." After referring to the Hough and Holloway cases, *supra*, the court said (p. 735): "It will be noted from this language that the determining factor is whether the agreement is *incorporated* into the decree and made a part thereof rather than being made a part of the decree by *reference*. Obviously there is a difference for if there is an actual *incorporation* of the agreement into the decree, the decree standing alone then carries within itself the complete measure of the rights and obligations of the parties. In the court's files, the decree or judgment itself supplies all the information necessary to whomsoever may be interested. If recorded it announces to the world the respective interests of the parties in any property involved.

"If on the other hand the agreement is *made a part of the* decree by *reference* only the above is not true. One searching the file could not construct a complete picture of the rights and obligations of the parties from the decree or judgment alone." Then, referring to the above quotation from the Lazar case, the court says (p. 736): "The plain import of this language seems to be in sensible conflict with the rule announced in the comparatively recent case of *Baxter* v. *Baxter*, 3 Cal. App.2d 676 [40 P.2d 536] where it is said: '. . . an order of the court that the terms of the contract be carried out will be implied from the incorporation of the agreement in the decree, either bodily *or by reference*.' (Italics added.) The cases of *Tripp* v. *Superior Court*, 61 Cal.App. 64 [214 P. 252], and *Ex parte Weiler*, 106 Cal.App. 485 [289 P. 645] are cited as authority for this statement, but an examination of those cases discloses that the Tripp case does not sustain such a rule, and that it is cited as sole authority for the pronouncement of such a rule in *Ex parte Weiler*. In the Tripp case the agreement was set out *in full* in both the interlocutory and final decrees and there is no statement in the opinion concerning any situation involving an incorporation by reference." The court holds further (p. 738): "It would seem to logically follow then that if a property settlement is made a part of a divorce decree by mere reference it is not incorporated into the decree within the meaning of that term as it is used in the Supreme Court cases of *Hough* v. *Hough*,

*supra,* and *Lazar* v. *Superior Court, supra,* and in the District Court of Appeal case of *Schnerr* v. *Schnerr, supra.* That consequently contempt proceedings are unavailable to assist in its enforcement and that resort may be had only to 'the usual contract remedies.' " As it was impossible to tell from the record whether the agreement was made a part of the divorce decrees by *actual incorporation,* "that is by being copied in the decree or by being attached thereto as an integral part thereof or whether it was 'made a part' thereof by merely referring to it" (p. 739) the case was remanded to the trial court for further proceedings.

In spite of the confusion that exists in the authorities, the later decisions have fairly, although perhaps vaguely, crystallized the rule. A fair summation of the rule as it exists today is the following: (1) If a property settlement agreement is merely referred to in the divorce decree, or approved by the court but not actually made a part of the decree and the performance of any of its provisions ordered, then the provisions of the agreement cannot be enforced by contempt proceedings. (2) If the agreement or any of its provisions are actually incorporated in the decree and the decree orders the performance of such agreement or such provision or provisions, then the agreement or the provision or provisions so incorporated are merged in the decree and may be enforced only as the order of the court.

Applying these tests to the decrees in our case, we find that the agreement did not become merged therein. While the decrees made the agreement parts thereof by reference and the agreement was physically attached to the interlocutory decree, there was no order made in either decree for the performance of the provisions of the agreement. Therefore, enforcement by contempt proceedings does not lie.

### RES JUDICATA

Plaintiff wife brought certain actions and obtained judgments upon the agreement which judgments petitioner contends constituted judicial determinations that the agreement never was merged in the decree and the question is, therefore, res judicata. In view of our holding that as matter of law the agreement did not become merged in the decree, it is unnecessary to consider the effect of these other judicial proceedings.

Let the peremptory writ issue as prayed.

Peters, P. J., and Ward, J., concurred.