[No. 31440. Department One. November 30, 1950.]

LOIS ROBINSON, *Respondent,* v. JOHN C. ROBINSON, *Appellant.*[1]

[1]Reported in 225 P. (2d) 411.

*Harry Ellsworth Foster* and *Tanner, Garvin & Ashley,* for appellant.

*Gladys Phillips,* for respondent.

HILL, J.—The question presented is whether the superior court for Grays Harbor county had jurisdiction to enforce by execution (comparable to a writ of assistance) the provisions of a property settlement agreement as set forth in a stipulation which had been incorporated by reference into and made a part of an interlocutory decree.

Lois Robinson brought an action for divorce against John C. Robinson. During the trial and after the judge had indicated his intention of granting a divorce to Mrs. Robinson, the parties entered into a property settlement agreement, which was captioned as a stipulation in the case and was filed as plaintiff's exhibit No. 3. Paragraph 1 thereof provided that Mrs. Robinson was to have awarded to her certain

specifically described real and personal property, five thousand dollars in cash, and five thousand dollars as an attorney's fee. We quote paragraphs 2, 3, 4 and 5 of the agreement and stipulation:

"2. *Defendant* [appellant] *is to have set aside unto him as his separate property, all other property acquired by the parties hereto prior to marriage, or during the years of their marriage, whether said property be real, personal, or mixed, and wheresoever located, and plaintiff* [respondent] *does hereby renounce any interest in any of said property not specifically described in Paragraph 1 hereof,* and in consideration of the property herein awarded to her does hereby renounce all claims for alimony or support money, now or in the future.

"3. Each party hereto agrees to make, execute and deliver to the other party, any instruments necessary to immediately and effectually transfer the title of any of the properties covered by this agreement in accordance with the terms hereof.

"4. Defendant is to assume and pay all indebtedness incurred by either party prior to April 1, 1948.

"5. The court herein has orally ruled that he intended to grant a decree of divorce to the plaintiff in this matter. It is hereby agreed that this stipulation, and all of its terms, may be embodied in the interlocutory decree of divorce when formally entered." (Italics ours.)

We also quote from the interlocutory decree, which was entered on April 5, 1948:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the property settlement of the parties, on file herein and marked plaintiff's exhibit 3 be, and the same is hereby approved and confirmed, made a part hereof and incorporated in this decree the same as though specifically set forth herein."

The final decree, entered October 13, 1948, contained the usual recitation that the interlocutory decree was in all respects approved and affirmed.

The Robinsons were married in 1939, and thereafter, including the year 1947, their income taxes were paid on the basis that all income was community property. In the spring of 1949, the bureau of internal revenue determined that much of the income had been from rents, issues and profits

from Mr. Robinson's separate estate, and assessed a large additional separate income tax for the years in question. This reduced the amount of the community income and resulted in a determination that there had been an overpayment of more than twenty thousand dollars in taxes on the supposed community income.

Lois Fisher, the former Mrs. Robinson, signed what is known as form No. 147-N, being a consent on her part to credit the overpayment on the supposed community income to the larger amount now assessed against Mr. Robinson on his separate income. She mailed this "Consent to Credit" to her attorney in Aberdeen, who refused to deliver it to Mr. Robinson.

To compel its delivery, Robinson applied for what he refers to as a writ of assistance, *i.e.*, he asked the court to require Lois Fisher and her attorney to deliver to him the "Consent to Credit" referred to, and that, in the event of their failure so to do, the court appoint a suitable person to execute the necessary consent on behalf of Mrs. Robinson, in accordance with the property settlement agreement which had been made a part of the interlocutory decree. The common-law writ of assistance would be one of the writs referred to in Rem. Rev. Stat., §§ 511, 512, 513 [P.P.C. §§ 48-5, -1, -7].

Lois Fisher appeared specially, challenging the jurisdiction of the court to enforce the interlocutory decree, and the trial court sustained the challenge on two grounds: (1) that the amount of the overpayment had not been before the trial court and, not being disposed of by that court in the interlocutory decree, it remained the common property of the parties; and (2) that the interlocutory decree was final as to property rights and the court had no jurisdiction to alter, adjust or enforce it.

Mr. Robinson appeals.

The respondent on this appeal urges a third ground for the support of the trial court's conclusion that it was without jurisdiction to give the appellant the relief requested, *i.e.*, that, although the interlocutory decree confirmed the

property settlement and made it a part thereof, it did not order the parties to do anything and hence could not be enforced. In short, if the overpayment is property covered by the property settlement agreement, the appellant should be relegated to his contract rights.

■ We will consider these three arguments *seriatum.* The answer to the first is that, by the terms of the property settlement agreement and stipulation which became a part of the interlocutory decree, the respondent had renounced her interest in any property not specifically awarded to her, and all property not so awarded to her had been awarded to appellant; consequently, there was no newly discovered property before the court for distribution. See *Walker v. Walker*, 327 Mich. 707, 42 N. W. (2d) 790.

■ The answer to the second argument is that appellant is not seeking to alter, modify or adjust any property rights, but is seeking to enforce the decree that was entered. It is true, as the trial court suggested, that under the divorce statutes here involved (Rem. Supp. 1947, § 988; Rem. Rev. Stat., § 989 [P.P.C. § 23-23]) it had no jurisdiction to change the property rights as fixed by the interlocutory decree (*Cassutt v. Cassutt*, 126 Wash. 17, 217 Pac. 35; *State ex rel. Bushnell v. Superior Court*, 168 Wash. 326, 11 P. (2d) 1071); and we have held that the provisions of such decrees, as they relate to the payment of money (as distinguished from alimony or support money for children), cannot be enforced by contempt proceedings. *State ex rel. Lang v. Superior Court*, 176 Wash. 472, 30 P. (2d) 237; *State ex rel. Foster v. Superior Court*, 193 Wash. 99, 74 P. (2d) 479. As pointed out in *Corrigeux v. Corrigeux, ante* p. 403, 224 P. (2d) 343, back of these cases is the constitutional provision that there can be no imprisonment for debt (state constitution, Art. I, § 17), together with holdings by this court and courts generally that alimony and support money for children is not a debt within the purview of such constitutional provisions.

■ The respondent says:

"Our court has considered the question of the jurisdiction of the court to enforce property settlements after the entry

of the decree of divorce and has held uniformly that the court is without jurisdiction."

The language of some of our cases may be broad enough to support that statement, but the actual holding of such cases is that our courts will not, by contempt proceedings, enforce payments of money (except for alimony and support of children). The reason for that, as we have pointed out, is a constitutional provision. However, this is not a contempt proceeding. It is inconceivable that a court in a divorce proceeding can divide the property between the parties and yet have no power to make that division effective if the parties are recalcitrant. The rule is well stated in Nelson on Divorce and Annulment (2d ed.), Vol. II, 285, § 16.01, where it is said:

"To the extent that the court has the power to adjust the property rights of the parties, it can require that its mandates be carried out, either by act of the party or by directing the making of a conveyance by a representative of the court if the party fails or refuses to make it. This is a generally recognized power of a court invested with authority to deal with property rights and interests. It is commonly exercised to effectuate transfer of interests if the parties are recalcitrant; hence there is nothing peculiar to divorce litigation in its application, where necessary, to carry out what the court is empowered to do by way of adjustment of rights and interests."

If a court of equity could not enforce its decrees,

" ' . . . obviously the court would be rendered impotent and we would have neither law nor order but everyone could do as he or she pleased. Of course, such a situation cannot be countenanced by the courts for a moment.' " *Tegtmeyer v. Tegtmeyer*, 292 Ill. App. 434, 443, 11 N. E. (2d) 657, 661, as quoted in *Brevet v. Brevet*, 316 Ill. App. 406, 45 N. E. (2d) 199.

We cannot agree with the trial court that it is without jurisdiction to make its property awards effective.

We come now to the third contention, that the decree does not order anything to be done and, hence, cannot be enforced. In *State ex rel. Ridenour v. Superior Court*, 174

Wash. 152, 24 P. (2d) 418, we refused to permit the enforcement by contempt proceedings of the provisions of a property settlement agreement relative to the payment of alimony. Our reasons, as there stated, were that

". . . the agreement to pay was not unconditional; nor was it incorporated in or made a part of the decree. The recital in the decree, that the agreement was made a part of it, was ineffectual, because at the time the decree was signed the agreement was not a part of the record. But further than this, we are convinced that a decree approving an unidentified agreement purporting to be a settlement of property rights is not a sufficient adjudication for alimony upon which to predicate contempt proceedings."

The present case has everything that was lacking in the *Ridenour* case. The agreement was unconditional and was amply identified; it was in the form of a stipulation, filed as an exhibit, and the parties agreed therein that it "may be embodied in the interlocutory decree of divorce when formally entered." The parties must have contemplated that their property settlement, when it became a part of the decree, would have the compelling power of the court behind it; and when by the interlocutory decree that stipulation was "approved and confirmed, made a part hereof and incorporated in this decree the same as though specifically set forth herein," it became more than the stipulation of the parties—it became the court's disposition of the property—and the reciprocal rights and obligations as set forth therein were definite, binding on the parties, and merged in the decree. *Brevet v. Brevet*, 316 Ill. App. 406, 45 N. E. (2d) 199. Unless that be so, the trial court failed to carry out the mandate of the statute to ". . . make all necessary provisions as to . . . custody, management and division of property . . ." (Rem. Supp. 1947, § 988) and to ". . . make such disposition of the property of the parties as shall appear just and equitable . . ." (Rem. Rev. Stat., § 989).

On this phase of the case respondent cites and relies upon the following California cases: *Tripp v. Superior Court*, 61 Cal. App. 64, 214 Pac. 252; *Andrews v. Superior Court*, 103

Cal. App. 360, 284 Pac. 494; *Ex Parte Weiler*, 106 Cal. App. 485, 289 Pac. 645; *Schnerr v. Schnerr*, 128 Cal. App. 363, 17 P. (2d) 749; *Baxter v. Baxter*, 3 Cal. App. (2d) 676, 40 P. (2d) 536; *Lazar v. Superior Court*, 16 Cal. (2d) 617, 107 P. (2d) 249; *Plummer v. Superior Court*, 20 Cal. (2d) 158, 124 P. (2d) 5. In each of these cases the question was whether the court would use the contempt process to enforce a money payment where the divorce decree did not in express terms direct the payment. The holdings of these California cases, as summarized in the case last cited, is

". . . that in order to authorize the enforcement of the provisions of a property settlement agreement by a contempt proceeding, the court must order the performance of such provisions."

We are not here concerned with the enforcement of a decree by contempt proceedings, and it is not necessary for us to determine whether the decree with which we are here concerned is one which would warrant such a remedy in the event either of the parties should refuse to comply with the clear and unequivocal provisions of the property settlement agreement.

█ It is our view that, when the parties to a pending divorce proceeding enter into a property settlement agreement which is made an exhibit in the case and in which it is stipulated that it may be made a part of the decree, and when the court approves it and incorporates it into the decree "the same as though specifically set forth" therein, such an agreement and stipulation is sufficiently made a part of the decree to warrant its enforcement by one of the writs of execution referred to in Rem. Rev. Stat., §§ 511, 512, 513, which would be the equivalent of a writ of assistance. The respondent could, by such a writ, enforce the conveyance and delivery to her of all the real and personal property referred to in paragraph 1 of the stipulation, and by the same token the appellant could enforce the conveyance and delivery to him of "all other property."

We do not regard form No. 147-N, "Consent to Credit," as property, but it is an instrument "necessary to immedi-

ately and effectually transfer" the amount of the overpayment on the supposed community income to the appellant or to make it available to him. (See paragraph 3 of the stipulation quoted *supra.*)

 The superior court for Grays Harbor county did have jurisdiction, on the facts stated in appellant's application, to enforce its decree in the manner requested and to require the execution and delivery of any instrument necessary to immediately and effectually transfer to or make available to the appellant the overpayment of more than twenty thousand dollars; and, in the event of the respondent's failure so to do, the superior court could appoint a suitable person to execute and deliver such an instrument. Squarely supporting this holding is the very recent case of *Walker v. Walker* (May 18, 1950), 327 Mich. 707, 42 N. W. (2d) 790.

The matter is not before us on the merits but simply on the question of the superior court's jurisdiction to proceed on the appellant's application to require the respondent to show cause why the property settlement agreement which had been made a part of the decree should not be enforced. Holding, as we do, that on the facts stated the challenge to the court's jurisdiction should not have been sustained, we remand the case for further proceedings not inconsistent with our holding herein.

SIMPSON, C. J., BEALS, and DONWORTH, JJ., concur.

GRADY, J. (dissenting)—I am in accord with the commendable desire of the majority to aid in seeing that which may now appear to be substantial justice shall be done as between the parties to this proceeding, but the difficulty is that appellant is asking the court to do something in the action between himself and respondent that it does not have jurisdiction to do. The present controversy does not involve anything that was a part of the property settlement which was approved by the court and made a part of the interlocutory order. During the marriage, an income tax return was made to the bureau of internal revenue, and the amount

of the tax was arrived at on the assumption the income was from community property of appellant and respondent. Later, they had a divorce action and made a property division without any special regard as to what might be community and what might be separate property.

The property settlement was made a part of the interlocutory order. Some time after the agreement and order were fully carried out and each became possessed of his and her part of the property, the bureau of internal revenue concluded that the income tax return was incorrect in setting forth that the income was from community property, and that a substantial part of it was income from the separate property of appellant. The result was that appellant was held to be individually indebted to the United States government, and the community which existed at the time the tax return was made was entitled to a credit. According to its practice there were two methods open to the bureau, one to collect from appellant the whole amount of his unpaid tax, and the other to secure the consent of respondent to credit any refund upon appellant's indebtedness and hold him liable for any deficit; but if there was an overplus a refund would be made. The bureau had a form to be used for manifesting such consent.

Appellant visited respondent in California, where she was residing, and secured her signature to a document denominated "consent to credit." Respondent did not deliver the document to appellant, but sent it to her attorney. Before the document was delivered to the bureau, respondent changed her mind and, in effect, withdrew her consent. Appellant now seeks to invoke the jurisdiction of the court in the divorce action to summarily order either respondent, who is domiciled in the state of California, or her attorney of record, to deliver the document to him, or in the event of refusal to appoint a commissioner to give a consent to credit. It seems to me a mere statement of the situation discloses that the court is without jurisdiction to do any part of that which is asked. The transaction is a three-cornered affair between the bureau of internal revenue, the

appellant and respondent, and one in which the courts cannot concern themselves as matters now stand.

The court cannot command respondent to do any act because it has not acquired jurisdiction of her person and cannot acquire jurisdiction over any property or tangible property right belonging to her. The document denominated "consent to credit" is not property or a property right. It is merely evidence of an expressed consent on the part of respondent that any refund to which the former community might have been entitled may be credited against what appellant owes the United States on his past income tax. The consent might have been given verbally either in person or through an authorized agent. It might have been given by a letter or telegram or over the telephone. In whatever form the consent might have been, it was voluntary and unilateral and could have been withdrawn at any time until acted upon by the bureau.

Nothing which may be the subject of judicial controversy can arise until the credit has been given and a refund has reached some tangible form so that it may be reached by the process of a court of competent jurisdiction. The jurisdiction of the court over appellant and respondent and their property fully terminated when the final decree of divorce was entered and cannot be regained except by and through a new proceeding. The interlocutory order as to division of property was fully executed and there was nothing contained therein to be later enforced by court action. A decision by this court that the trial court has jurisdiction to hear and determine the matter now before us by this appeal would be in itself a nullity and could not empower the superior court to determine questions not now justiciable in the former divorce action.