[Civ. No. 15126. Second Dist., Div. Three. Feb. 15, 1946.]

FAYE L. BARKELEW, Respondent, v. JAMES T. BARKELEW, Appellant.

McLaughlin & McGinley and William L. Baugh for Appellant.

Morgan & Davidson for Respondent.

FOX, J. pro tem.—This is an appeal by the defendant from a special order made after final judgment of divorce denying defendant's motion: (1) for a *nunc pro tunc* order to correct the interlocutory decree; and (2) for an order declaring that under the terms of said interlocutory decree, as amended *nunc pro tunc*, the defendant's duty to make monthly payments for plaintiff's support has terminated until the further order of the court, since the plaintiff is now receiving more than $150 per month from a trust fund.

On March 14, 1931, the plaintiff filed an action for divorce. In her complaint she alleged that the parties had previously entered into a written agreement settling their property rights and that the defendant had agreed to pay her $125 per month for her support. (Payments for the support of a minor son are not here involved.) Plaintiff prayed that the property settlement agreement be approved and that defendant be ordered to pay her said sum per month. The defendant did not answer and the case was heard as a default on April 14, 1931. The minutes of the proceedings, after reciting the names of those who testified for the plaintiff, simply state: "Interlocutory Decree of Divorce is granted to the Plaintiff." There is no reference in the minutes to any property settlement agreement, nor is any exhibit shown to have been introduced or offered in evidence.

The interlocutory decree provided that "the property

settlement agreement entered into by and between the parties hereto, dated June 20th, 1927 . . . is hereby approved." It also contained the following provision: "It Is Further Ordered, Adjudged and Decreed, in conformity with the terms of said agreement, that the defendant, James T. Barkelew, pay to the plaintiff, Faye L. Barkelew, for her support and maintenance, the sum of One Hundred Twenty-five Dollars ($125.00) per month, commencing May 1st, 1931, and on the 1st day of each and every month thereafter as long as the said plaintiff shall live, or until she remarries. . . ."

The final decree of divorce was entered April 25, 1932.

Under the property settlement agreement of June 20, 1927, it was contemplated that one designated parcel of property would be sold for $75,000 and the proceeds divided between the parties. It was provided, however, that pending the sale of said parcel the plaintiff would have the privilege of occupying the same and the defendant would pay the plaintiff $175 per month for her support, and that after said sale and the division of the proceeds therefrom the payments to plaintiff would be $100 per month. The said property was thereafter sold and the proceeds divided some time prior to the filing of plaintiff's complaint. As a consequence, an additional agreement was entered into dated March 20, 1931. The latter agreement refers to the former and recites the sale of the said parcel of property and the division of the proceeds therefrom and further recites, among other things, that the return from the investment of plaintiff's share of the proceeds of said sale had not equalled the amount the parties had anticipated when the original agreement was executed, hence the defendant agreed to pay the plaintiff an additional $25 per month, thus making the monthly payments $125.

The agreement of June 20, 1927, contains the following paragraph: *"The second party* [wife] agrees, in the event of a divorce and her remarriage, that such remarriage shall constitute a termination of all liability to make the foregoing payment for her support, and *also agrees, in the event she secures or receives an income equal to One Hundred Fifty Dollars ($150.00) per month from any source other than the property which she is acquiring under this agreement or the proceeds therefrom, that during such time as such income shall continue she will waive the said foregoing payment for her support."* (Italics added.) Defendant bases his motion to correct the interlocutory decree on the italicized portion of

this paragraph. He contends that an appropriate provision based on this italicized language should have been included in the interlocutory decree and that the failure to incorporate such provision therein was due to a clerical error, and further that such provision may now be inserted in said decree *nunc pro tunc*.

The law is well settled that a clerical error (the definition of which has been considerably expanded in the more recent decisions) in a judgment appearing on the face of the record may be corrected by a *nunc pro tunc* order and that such correction may be made at any time (*Estate of Goldberg* (1938), 10 Cal.2d 709 [76 P.2d 508]). The purpose of this procedure is "to make the judgment as entered conform to the *judicial decision* actually made." (*Benway* v. *Benway* (1945), 69 Cal.App.2d 574, 579 [159 P.2d 682].)

In the instant case, however, the record does not establish that the "*judicial decision* actually made" in awarding plaintiff an interlocutory decree of divorce and $125 per month for her support included any provision to the effect that if the plaintiff received an income of $150 per month from any source other than the property which she acquired in her settlement with the defendant that defendant would be relieved of making any payments for her support during such time as she received such other income. As previously noted, the minute order does not show that any judicial decision was actually made touching that question. The minutes do not show that either of the agreements between the parties was introduced in evidence. No transcript of the testimony taken at the default hearing in 1931 was offered in this proceeding to show that the said agreements, or either of them, were introduced in evidence or were otherwise before the trial judge. No testimony was offered through the attorney who represented the plaintiff at the default hearing or the judge who presided at said hearing to establish that either of said agreements was actually before the court at that time.

The complaint merely alleged that the parties had entered into "a written agreement settling their property rights, wherein and whereby the defendant promised and agreed to pay to the plaintiff the sum of $125 per month" for her support, but did not identify it by date or otherwise. In the prayer plaintiff asked that the property settlement agreement be approved and that defendant be ordered to pay

plaintiff the stated monthly payments. No reference was made in the complaint to the provision of the property settlement agreement here under consideration. No reference is made to the agreement of March 20, 1931, in the default proceedings or in the interlocutory judgment.

In denying defendant's motion to correct the interlocutory judgment *nunc pro tunc* the trial judge may well have concluded that neither of the agreements herein referred to was before the court on the default hearing in April, 1931, and that no judicial decision was then actually made or intended to be made by the court with respect to the problem here under consideration. Under such circumstances it would not now be proper to amend, in effect, the interlocutory decree upon the theory of correcting a clerical error so as to add a limitation to the defendant's obligation to pay plaintiff $125 monthly which the court did not in fact place thereon when said decree was granted. ■ As was said in *Felton Chemical Co.* v. *Superior Court* (1939), 33 Cal.App.2d 622, 627 [92 P.2d 684], where the propriety of a *nunc pro tunc* order was under consideration, the proposed *nunc pro tunc* order in the instant case "does not by its terms amend the already entered judgment to make the latter conform to the decision which the court actually rendered, but attempts to amend by new modifications and enlargements the judgment which the court originally rendered. This the court is not empowered to do. It may not make the judgment express anything not embraced in the court's decision, even though the proposed amendment contains matters which ought to have been so pronounced." (Citing authorities.) The proposed amendment would indisputably change the interlocutory judgment in an important respect, and as pointed out in the Felton Chemical Co. case, *supra* (p. 627), "amendments to judgments can only be made for the purpose of making the record conform to the truth, and not for the purpose of revising and changing the judgment." (See, also, *O'Brien* v. *O'Brien* (1899), 124 Cal. 422 [57 P. 225].)

■ Defendant bases his argument principally on the provisions of the interlocutory decree that approved the property settlement agreement "dated June 20th, 1927" and recited that "in conformity with the terms of said agreement" defendant was ordered to pay plaintiff for her support $125 per month as long as she lived or until she remarried. These provisions, however, do not necessarily establish that the

agreements which the parties had executed, or either of them, were actually before the court on the default hearing. These provisions likewise do not necessarily establish that the court made or intended to make any such limitation on defendant's obligation to pay plaintiff $125 per month, as he contends for here. It seems clear that the agreement of March 20, 1931, was not before the court. It is not referred to in the interlocutory decree or elsewhere in the record. It likewise seems doubtful that the agreement of June 20, 1927, was actually before the court. It nowhere provided for the payment of $125 per month for plaintiff's support. Under that agreement plaintiff was to receive $175 per month until a specified piece of property was sold and thereafter $100 per month. The payments were to be made ''on or before the tenth day of each calendar month.'' The interlocutory decree provided that the monthly payments of $125 should be made ''on the first day'' of each month. This agreement also provided that defendant should be relieved of the liability to make the aforesaid payments to plaintiff in the event sickness or other physical disability rendered him unable to carry on his profession unless his income was $10,000 per year. No such limitation, however, on defendant's liability to make said monthly payments for plaintiff's support was placed in the interlocutory decree.

It is entirely likely that the court was simply informed that the parties had settled their property rights and that the defendant had agreed to pay plaintiff $125 per month for her support until she remarried; that the portion of the agreement with respect to their property rights had been executed but that its approval by the court was desired and that the defendant should be ordered to make the monthly payments for plaintiff's support. While such informal procedure is not to be encouraged, it would afford a possible explanation for the failure of the interlocutory decree to contain any order based on the provision of the agreement of June 20, 1927, here in question, or to contain any order based on other provisions of that agreement, and would also explain the absence of any approval of or reference to the agreement of March 20, 1931.

In view of our conclusion that the court properly denied defendant's motion to correct the interlocutory decree *nunc pro tunc*, it becomes unnecessary for us to interpret said decree as it was proposed to be amended. The rights of the

parties under the contracts herein mentioned are not before us on this appeal.

The order is affirmed.

Shinn, Acting P. J., and Wood, J., concurred.

A petition for a rehearing was denied March 15, 1946, and appellant's petition for a hearing by the Supreme Court was denied April 15, 1946. Schauer, J., and Spence, J., voted for a hearing.