No. 18,446.

WARREN BRYCE ALLINGHAM *v.* VICTORIA ALLINGHAM.
(348 P. [2d] 259)

Decided December 28, 1959.

Mr. LESLIE A. GROSS, Mr. RICHARD D. DITTEMORE, for plaintiff in error.

Mrs. MARJORIE WORLAND EPPING, Mr. ROBERT E. McLEAN, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

DEFENDANT in error, Victoria Allingham, was plaintiff in an action in the district court which sought collection of arrearages in alimony. Her complaint contained two claims, the first of which was based on a judgment of the Superior Court of Los Angeles, California, and an order of execution issued pursuant to that judgment which liquidated and fixed the amount of arrearage as of October 11, 1955, in the amount of $3250.00. The second claim demanded the amount of arrearages on the basis of the divorce decree and the agreement of the parties which had been incorporated in that decree. The trial court awarded plaintiff judgment on her first claim, held that the second claim merged in the judgment and denied her demand for attorney's fees.

The answer of the plaintiff in error, defendant in the trial court, who will be here referred to as defendant, admitted the divorce action in Los Angeles County in 1950 and denied all of the other allegations of the complaint. It also alleged that the California judgment was unenforcible for the following reasons:

a. That the judgment for accrued alimony was entered without notice to or appearance by defendant, as a result of which there was a violation of judicial due process in connection with its entry; that by reason of this want of jurisdiction the judgment is not entitled to full faith and credit.

b. That the original decree entered March 10, 1950, was changed in substantial respect by a *nunc pro tunc*

order entered October 6, 1954, without notice, service of process or appearance by defendant; that this modification was invalid under the laws of California and consequently the judgment was not entitled to full faith and credit.

c. That defendant received a written assurance from plaintiff's California lawyer that he, defendant, would receive notice of any effort to reduce the arrearage of alimony to judgment; that thereafter and without providing defendant with notice the present execution was obtained and that by reason of the want of notice it is void and unenforcible.

d. That the property settlement agreement which is a basis for the California decree was not intended to be a binding obligation; that it was entered with a view to "placating the plaintiff and obtaining a reconciliation."

e. That in June 1952 the parties agreed to terminate the alimony obligation in the amount of $65.00 per month.

Since they are not here urged as error, the other defenses set forth in the answer are not important in the present review.

Defendant also filed a counter-claim in which he demanded that the California judgment be modified. He alleged that he had been deprived of his rights of visitation and demanded that he be relieved of his obligation to pay support money until such time as his visitation rights were recognized. He further asked that his status under the property settlement agreement be determined and that the court find and conclude the existence of the oral modification of the agreement whereby plaintiff agreed to forego the alimony payments and that he be relieved of further payments of alimony.

The plaintiff obtained an interlocutory decree of divorce from defendant on March 10, 1950, in Los Angeles, California. Defendant was there served personally with process. A property settlement agreement had been entered on January 20, 1950, and this provided for

monthly payments of $135.00 child support and $65.00 on account of alimony. The interlocutory decree in the California court referred to the property settlement as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED that the Property Settlement dated January 20, 1950, entered into between plaintiff Victoria Allingham and defendant Warren Bryce Allingham is hereby approved in its entirety, received in evidence, marked plaintiff's Exhibit A, and by reference made a part of this Interlocutory Judgment of Divorce as though fully set forth herein.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED that Victoria Allingham, the plaintiff herein, and Warren Bryce Allingham, the defendant herein, be, and each of them is hereby ordered and directed to perform each and every covenant contained in said Property Settlement Agreement hereinbefore referred to and received in evidence as plaintiff's Exhibit A."

Defendant made the payments until the middle of 1952 at which time he remarried, and coincident with the remarriage discontinued the $65.00 alimony payment. On about October 5, 1954, defendant, who then resided in Denver, received notice by letter that plaintiff would request the California court to determine and adjudicate arrearages at a hearing which was then scheduled on October 21, 1954. Following the receipt of this notice defendant retained his present counsel who at once wrote to plaintiff's California attorney requesting that he be granted a continuance and stating that defendant was dissatisfied with his rights of visitation. Defendant's attorney, Mr. Gross, also advised plaintiff's California attorney that:

" * * * I am attempting to secure representation in California, and I hope that you will hear from our counsel directly. In the meantime, I respectfully ask you to continue the date of hearing in order that we may prepare our defense for effective presentation to the Court.

I wish you would confirm this arrangement by return mail.

\* \* \*

"I want you to know, further, that the plaintiff has attempted to influence the children of the marriage against the defendant and has caused the children to write letters of opprobrium and vilification to the defendant, his wife, and his mother and father, without any cause whatever. I also want you to know that the plaintiff has done everything in her power to prevent the defendant from having any effective right of visitation. Finally, I want you to know that we stand ready to discuss settlement and, if your mathematics are correct, will borrow money, if necessary, to settle and compromise the amount of the arrearages if we can agree on a more reasonable order to apply in the future and if the defendant can have temporary custody of the children of the marriage in his home during, say, two months each summer."

On October 7, 1954, plaintiff's California attorney responded as follows:

"Please rest assured that if your client intends to make an appearance in the above matter, as you have indicated, I will ask the matter to go over for a reasonable period of time, to be reset for hearing so that you may be afforded an opportunity to make arrangements for your client's opportunity to be represented at the hearing.

\* \* \*

"Again may I assure you that, in view of your letter, I will not bring the matter up for hearing without first giving you ample time in which, either to successfully negotiate a settlement of the matter, or arrange for representation for your client at the hearing which will be set for a date later than presently assigned."

Plaintiff obtained from the judge who had presided at the original divorce proceedings a *nunc pro tunc* order which incorporated explicitly rather than by refer-

ence the alimony and support terms of the property settlement agreement. In connection with this order, plaintiff's California counsel filed an affidavit setting forth his belief that such an order was necessary in order for plaintiff to be able to collect arrearages due on the judgment.

The negotiations evidenced by the letters quoted in part above were continued but no settlement was ever reached and so about one year later, on October 11, 1955, plaintiff obtained the order here in issue which is an order allowing execution as to accrued alimony which then amounted to $3250.00. This was based on plaintiff's affidavit dated September 30, 1955.

The points and contentions of defendant on this review are essentially similar to those which are contained in the answer and counterclaim filed in the trial court and an outline of these appears sufficiently above.

1. *The question whether plaintiff has a right to depend upon the nunc pro tunc order.*

In our opinion, it is unnecessary to determine whether the *nunc pro tunc* change in the original divorce decree was merely formal and clerical or was substantial, because we conclude that under the law of California a property settlement agreement containing provisions for alimony and support may be incorporated in a divorce decree thereby giving to it a binding effect as a judgment or decree. *Flynn v. Flynn* (1954)., 42 Cal. (2d) 55, 265 P. (2d) 865. There the court construed the decree and the agreement in words of incorporation very similar to those which appear in the decree under review. It was held that the parties and the court intended a merger. It was there said:

" * * * If a merger is intended, the purpose of incorporation is, of course, to make the agreement an operative part of the decree. In the absence of an express order to perform all or part of the agreement, it may be difficult to determine whether or not a merger was intended. See, Plummer v. Superior Court, 20 Cal. 2d

352

158, 165, 124 P. 2d 5; Lazar v. Superior Court, 16 Cal. 2d 617, 620, 107 P. 2d 249; 1 Armstrong, California Family Law, pp. 423-427; cf. Kent v. Superior Court, 106 Cal. App. 2d 593, 595-596, 235 P. 2d 420; Young v. Superior Court, 105 Cal. App. 2d 65, 66-67, 233 P. 2d 39; Shogren v. Superior Court, 93 Cal. App. 2d 356, 364, 209 P. 2d 108. In the present case, however, there can be no doubt as to the intent of the parties and the court that a merger should occur. Thus, the decree provided that the agreement is hereby specifically incorporated herein and made a part of this decree, and defendant is hereby ordered to make all of the payments provided therein to be paid by him. * * * "

The California decisions which are relied on by defendant, *Barkelew v. Barkelew*, 73 Cal. App. (2d) 76, 166 P. (2d) 57, where the trial court merely *approved* the decree, and *McLaughlin v. McLaughlin*, 141 Cal. App. (2d) 494, 296 P. (2d) 878, are not in point.

The *nunc pro tunc* order of October 1954 did not vary the legal effect of the agreement which had been already *incorporated* in the divorce decree. Such a practice was and is permissible in California. That being so, we are of the opinion that the decree as originally entered is entitled to recognition and enforcement. The *nunc pro tunc* order, the purpose of which was to make the agreement an integral part of the decree, was superfluous.

2. *The question of sufficiency of the notice.*

In support of his contention that he did not receive actual notice of intent on the part of plaintiff to reduce the arrearage to judgment or to obtain execution and that the judgment was therefore void and unenforcible, plaintiff cites *Griffin v. Griffin*, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635. In that case an interlocutory decree of divorce had been entered in New York on June 6, 1924. This decree was later modified so as to require the defendant to pay $3,000.00 annual alimony in equal monthly installments. The defendant left New York and

established residence in Washington, D. C. Contempt proceedings were instituted against him in 1935. As a result of these proceedings the New York Supreme Court declared the amount then due to be $18,500.00. On February 13, 1938, the plaintiff moved for judgment on arrearage, including that which had accumulated after the 1936 contempt finding. The Supreme Court of the United States held the judgment to be void as to those sums in excess of the $18,500.00 declared in the contempt proceeding and said:

" * * * Since by virtue of the due process clause the judgment is ineffective in New York to adjudicate petitioner's rights for enforcement purposes, it cannot be made the instrument for enforcing elsewhere the obligation purportedly adjudicated by it. And even if we were to say that by virtue of the New York practice, and without reference to due process, the 1938 judgment is not an assertion of judicial power to bind petitioner's property for the obligation which the judgment purports to establish, such a judgment would obviously add nothing to the 1926 decree as a basis for enforcing the obligation in another jurisdiction. Neither the judgment nor the earlier decree would do more than establish the original obligation to pay alimony subject to defenses which the supposed New York practice would preserve if due process did not.

" * * * It follows that to the extent that the 1938 judgment purports to adjudge as due and owing arrears of alimony accrued since October 25, 1935, the end of the period covered by the 1936 order, it is ineffective to establish petitioner's personal liability, or to deprive him of defenses to his asserted liability for those arrears."

The distinguishing feature between *Griffin v. Griffin,* supra, and the present case is that under the law of New York the defendant was at liberty to show a change of circumstances justifying a reduction of alimony already

accrued. It was retroactively modifiable. This was noted in the *Griffin* opinion as follows:

" * * * Under the local practice, alimony which has accrued under a decree of divorce may not be collected by execution unless and until a judgment for the amount of alimony accrued but unpaid is docketed by order of the court which issued the decree. *Thayer v. Thayer,* supra; *Ostrin v. Posner,* 127 Misc. 313, 215 N.Y.S. 259. And upon a motion to docket a judgment, arrears of alimony awarded under a prior decree, the husband may defend on the grounds that the alimony or some part of it is not due because of the death or remarriage of the wife, *Kirkbride v. Van Note,* 275 N.Y. 244, 9 N.E. 2d 852; or that circumstances have so changed as to justify a reduction of alimony already accrued by modification of the alimony decree, *Van Dusen v. Van Dusen,* 258 App. Div. 1020, 17 N.Y.S. 2d 96 (3d Dept.); *Cunningham v. Cunningham,* 261 App. Div. 973, 25 N.Y.S. 2d 993, 934 (2d Dept.); *Eisinger v. Eisinger,* 261 App. Div. 1031, 26 N.Y.S. 2d 22 (3d Dept.)."

■ Noteworthy is the fact that under the California practice the final judgment is the divorce decree. Execution issues without a hearing upon the basis of a showing that an installment is unpaid. *West's Ann. California Code,* Sec. 681, *Dicorpo v. Dicorpo,* 33 Cal. (2d) 195, 200 P. (2d) 529. If in the *Griffin* case it had not appeared that the defendant had been deprived of an underlying right, the holding would have been different. Its entire basis is that defendant was deprived of the right to raise defenses. Defendant has failed to satisfy this phase of the *Griffin* case. He has not shown that he has a defense which he could have raised under the law of the state of California. His sole defense purporting to go to the merits is that in the year 1952 the plaintiff voluntarily agreed to forego future alimony payments. The evidence that such agreement was reached is meager, and, moreover, under the statutes of California no such defense would have been available. The pertinent statutory pro-

vision which forecloses any such defense reads as follows:

" * * * That portion of the decree or judgment making any such allowance or allowances, and the order or orders of the court to enforce the same may be modified or revoked at any time at the discretion of the court except as to any amount that may have accrued prior to the order of modification or revocation. * * * " (Emphasis supplied.) *West's Annotated California Code, Sec. 139.*

See also 6 A.L.R. (2d) 1333 wherein the author states:

" * * * But the California courts have gone to the opposite extreme; even though they do not permit a cancelation of arrears (supra §3) they permit the husband to be mulcted by awarding the wife reimbursement for past expenditures under varying fact situations, generally involving the support of a child. * * * "

And see *Keck v. Keck,* 219 Cal. 316, 26 P. (2d) 300, *Steele v. Steele,* 108 Cal. App. (2d) 595, 239 P. (2d) 63, and *Stephens v. United States,* 88 Cal. App. (2d) 654, 199 P. (2d) 314, which recognize this interpretation. See 4 *Calif. L. Rev.* 692, 696, n. 29.

■ Since the California court would have been powerless to modify the 1950 divorce decree, including its alimony and support provision, we are unable to agree with the defendant's contention that he has been prejudiced as a result of the failure of the plaintiff to give him notice of the issuance of the 1955 writ of execution under which the present action was instituted. Not only does the defendant fail to *allege* that he has a defense, but the existence of a defense is not apparent from a canvass of the entire record. Under such circumstances *Griffin v. Griffin,* supra, does not come into play. Cf. *Lohman v. Lohman,* 29 Cal. (2d) 144, 173 P. (2d) 657.

Our viewpoint as to the holding in *Griffin v. Griffin,* supra, is generally recognized. 168 A.L.R. 232; *Ehrenzweig, Conflict of Laws.* Here the author, in speaking of retained or continuing jurisdiction, declares:

" * * * Since judgments in such cases usually do not purport to be final, 'retention' of jurisdiction without renewed notice should be valid only for a limited period rather than until the voluntary relinquishment of such jurisdiction by the court. Indeed, this seems to be the law, even where the prior proceedings gave notice to the defendant of a possibly continuing jurisdiction, at least insofar as the subsequent proceedings undertake 'substantially to affect' the defendant's rights in a manner not adjudicated in the prior proceedings. This problem becomes particularly important where the concepts of finality and comity (often obscure) induce the court of a sister state to refuse sole or concurring jurisdiction because of a continuing jurisdiction elsewhere. * * * "

This Court has held in *Jenner v. Jenner,* 138 Colo. 149, 330 P. (2d) 544, that a judgment as to sums accrued may be obtained without notice to defendant. The Court, in the *Jenner* case, relied on *Burke v. Burke,* 127 Colo. 257, 255 P. (2d) 740. In an earlier case, *McGregor v. McGregor,* 52 Colo. 292, 122 Pac. 390, it was held that a California judgment must be enforced under the full faith and credit clause of the Constitution as to accrued installments where the decree is not retroactively modifiable at the place where the judgment is entered. In the *McGregor* case the Court enforced a California judgment and took the position that payments become vested as they accrue. The early decision of the United States Supreme Court in *Sistare v. Sistare,* 218 U.S. 1 (1910), was there relied upon.

*Gillespie v. Gillespie,* 62 N.Y. Supp. (2d) 271, interprets *Griffin v. Griffin,* supra, as we do. The Court there declared:

"* * * The effect of a New York judgment for arrears in alimony entered without notice to a husband, has only recently been decided by the U.S. Supreme Court. Griffin v. Griffin, February 26, 1946, 66 S.Ct. 556, 90 L.Ed. ......... It was there held, by a divided court, that due process requires notice to a defendant husband be-

fore entering such judgment, where under the local practice upon such a motion for judgment for accrued alimony, the husband may seek modification of the alimony decree nunc pro tunc or raise defenses to the motion. As indicated in Watts v. Watts, supra, the Massachusetts courts have determined they have power upon a petition for execution to modify a decree for alimony not only as to future payments, but also as to arrears. Upon the authority of the Griffin case, plaintiff's motion for summary judgment must therefore be denied."

The only authority which appears to hold that the failure to give notice voids the decree in and of itself irrespective of substantial consequence is *Lewis v. Lewis*, 49 Cal. (2d) 389, 317 P. (2d) 987. The California court there refused to enforce an Illinois decree which was not retroactively modifiable in Illinois. The Court noted that under the practice in Illinois notice to the party or his attorney was essential to the validity of a judgment for accrued installments. The Court also declared that the question of the amount of arrearage was an open one but failed to indicate to what extent it was, or why it was open. Seemingly, the California court ruled that the matter could be retried in the California trial court with respect to amount of arrearage which was then due. Since the original Illinois decree was admittedly not retroactively modifiable, it is difficult to see a remaining triable issue in the case. We are not persuaded by this decision.

We do not consider *Worthley v. Worthley*, 44 Cal. (2d) 465, 283 P. (2d) 19, also relied on by defendant, pertinent. It merely holds that foreign created alimony and support obligations are enforcible in California and that in an action based upon such a decree the California court will try any modification plea or petition which is allowable in the jurisdiction where the decree was originally entered.

3. *The issue of defendant's status.*

Defendant's counter-claim sought a determina-

tion that the California decree as originally issued had been modified by an oral agreement. As indicated in *Halvey v. Halvey,* 330 U.S. 610, and *Worthley v. Worthley,* supra, this type of relief is available in the discretion of the trial court. As shown above, however, the pertinent California statute does not allow an oral modification which has not been made effectual by modification of the decree itself. Prospective modification was a matter for the trial court's discretion. See *Triest v. Triest* (1944), 67 Cal. App. (2d) 320, 154 P. (2d), and *Bratnober v. Bratnober* (1957), 48 Cal. (2d) 259, 309 P. (2d) 441. Cf. *Minnear v. Minnear,* 131 Colo. 319, 281 P. (2d) 517.

4. *Plaintiff's claim for attorney's fees.*

Plaintiff contends that the trial court erred in its failure to award reasonable attorney's fees incurred in prosecuting the action in this state. This claim is predicated upon a provision of the property settlement agreement (incorporated in the decree) which states:

"It is further understood and agreed that in the event it becomes necessary to institute other and further proceedings to enforce any of the terms, covenants and conditions of this agreement, the husband shall pay and indemnify the wife for all costs and additional attorneys fees."

In her second claim, plaintiff demands attorney's fees based upon this decree. As we view it, there are two reasons for denying this request. First, the judgment herein is based upon a California award in the liquidated amount. Moreover, the original divorce decree, of which the property settlement is a part and the claim based thereon, was merged in the claim based upon the liquidated California award. This being so, plaintiff is entitled only to the amount of the California judgment plus interest and costs. Attorney's fees could be granted only to the extent that the second claim for relief requesting the trial court here to compute the amount of arrearage is not merged in the claim based

upon the liquidated final order of the California court.

The second reason for denial of attorney's fees is that the contract authorizes the recovery only upon an indemnifying basis. The record is devoid of proof to establish that the plaintiff incurred or paid any attorney's fees. Cf. *Rock Wool Insulating Company v. C. C. Huston,* 141 Colo. 13, 346 P. (2d) 576, and the cases there cited.

Finally, it is to be noted that in plaintiff's second claim the demand was for $3900.00 rather than $3250.00, the amount authorized in the California order and allowed by the district court here. Presumably this difference was based upon the amount which had accrued as of the time of instituting suit here in Colorado. The trial court allowed a recovery on the first claim only and here the second claim merged in claim No. 1. As to any amounts which had accrued after the California execution, we fail to see how there could be a merger. We mention this for the guidance of the trial court in the event of further proceedings herein.

The judgment is affirmed.

MR. JUSTICE HALL not participating.