**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 81966-6-I |
| | ) | |
| KATHRYN M. COX, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| and | ) | |
| | ) | |
| JOHN JOSEPH COX, | ) | |
| | ) | PUBLISHED OPINION |
| Respondent. | ) | |
| | ) | |

MANN, C.J. — Kathryn Cox appeals the trial court's order issuing a writ of restitution. The order stems from a dissolution proceeding between Kathryn and John Cox. Kathryn[1] argues that the trial court did not have subject matter jurisdiction to issue the writ, that the writ was an improper form of relief, and that the court lacked authority to enter contempt sanctions. We affirm.

<u>FACTS</u>

Kathryn and John Cox married in 1986. Kathryn petitioned for dissolution in 2016. Following a bench trial, the trial court entered a decree of dissolution in July 2017. The decree ordered that Kathryn and John's family home "shall be listed for sale with an agreed upon real estate agent within 90 days of the date of entry of this order."

---

[1] We refer to the parties by their first names for clarity. We intend no disrespect.

The order further stated "both spouses shall promptly execute all documents necessary to facilitate the sale of the Real Property" and take no action "further encumber[ing] the Real Property." All decisions regarding the sale were to "be made by the parties jointly and promptly, without unreasonable delay, and with any disputes submitted to arbitration." Pending sale, Kathryn and John were to hold the home in "equal shares, as Tenants in Common (without right of survivorship)." The court permitted Kathryn to "occupy the [home] pending sale," but she was to "maintain it in reasonable show condition and facilitate showings at reasonable times."

Kathryn appealed the final decree to this court which affirmed the trial court's decision in an unpublished decision. In re Marriage of Cox, No. 77634-7-I (Wash. Ct. App. June 10, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/776347.pdf.

Kathryn has refused to leave the home since entry of the dissolution decree in 2017. Following entry of this court's mandate, John attempted to enforce the decree and facilitate sale of the home. On March 4, 2020, the trial court granted John's motion to compel arbitration. On March 13, 2020, the arbitrator granted John's request to enforce the decree and ordered the sale of the home, requiring that John and Kathryn sign a listing agreement within 10 days of the decision. Despite the arbitrator's order, Kathryn continued to occupy and inhibit the sale of the home.

On April 18, 2020, John sought a second arbitration. The arbitrator granted John's request for an order appointing a special master to sign "any and all documents" on behalf of Kathryn to effectuate the sale of the home. Despite two arbitrations, Kathryn continued to occupy and inhibit the sale of the home.

-2-

On June 17, 2020, John sought a third arbitration. The arbitrator entered an order requiring that Kathryn vacate the home by no later than July 27, 2020. The arbitrator further determined that should Kathryn fail to vacate the property, John "shall be entitled to a civil standby officer to forcibly remove [her]." Finally, the arbitrator granted John the "sole decision making on the sale process for the residence."

On July 21, 2020, the trial court confirmed all three of the arbitration awards and entered judgment in favor of John. Kathryn did not appeal this order.

On September 16, 2020, John sought a writ of restitution from the trial court to forcibly remove Kathryn from the home. After briefing, on October 8, the trial court ordered that a writ of restitution be issued. After the sheriff refused to serve the writ due to a scrivener's error, an amended writ was issued on November 9, 2020. The amended writ was consistent with the sheriff's Covid-19 policy of allowing an additional 30 days to execute the writ. The sheriff served, but did not execute, the writ on November 17, 2020.

The same day that the sheriff served the writ, Kathryn posted a supersedeas bond with the trial court to stay the writ pending appeal. Kathryn's counsel contacted the sheriff, informing them that the bond stayed the matter. Relying on RAP 8.1(b)(2),[2] the sheriff agreed not to enforce the writ.

On December 23, 2020, John moved to extend the writ, dissolve the stay of enforcement, and assess terms for contempt. On January 8, 2021, the court denied

_____

[2] RAP 8.1(b)(2) states:
Except where prohibited by statute, a party may obtain a stay of enforcement of a decision affecting rights to possession, ownership or use of real property or of tangible personal property, or intangible personal property, by filing in the trial court a supersedeas bond or cash, or alternate security approved by the trial court pursuant to subsection (b)(4).

John's motion, finding that Kathryn had stayed the writ pending appeal by posting the supersedeas bond.

This appeal follows.

ANALYSIS

A.  Writ of Restitution

Kathryn argues first that the trial court erred in granting a writ of restitution outside an action under the forcible entry and unlawful detainer statute, ch. 59.12 RCW.[3]  We disagree.

A court's authority to enforce its orders is well settled by Washington statute. "every court of justice has power . . . to compel obedience to its judgments, decrees, orders and process, and to the orders of a judge out of court, in an action, suit or proceeding pending therein."  RCW 2.28.010(4).  Further, "[e]very judicial officer has power . . . to compel obedience to his or her lawful orders as provided by law."  RCW 2.28.060(2).  When no proceeding is prescribed, a court may draw from its implied powers to compel obedience:

> When jurisdiction is, by the Constitution of this state, or by statute, conferred on a court or judicial officer all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by statute, any suitable process

[3] Kathryn's briefing argues that the trial court lacked "subject matter jurisdiction" to issue the writ of restitution.  She is incorrect.  Subject matter jurisdiction "refers to the court, in which a party files a suit or a motion, being the correct court for the type of suit or character of a motion."  In re Estate of Reugh, 10 Wn. App. 2d 20, 48, 447 P.3d 544 (2019).  "Superior courts are courts of general jurisdiction" and thus have "the power to hear and determine all matters, legal and equitable, . . . except in so far as these powers have been expressly denied."  In re Marriage of Thurston, 92 Wn. App. 494, 498, 963 P.2d 947 (1998).  The controlling question when determining subject matter jurisdiction is "whether the court possessed the authority to adjudicate the type of controversy involved in the action."  Ronald Wastewater Dist. v. Olympic View Water and Sewer Dist., 196 Wn.2d 353, 372, 474 P.3d 547 (2020).  Here, the type of controversy is the Cox's dissolution proceeding.  It is well understood that the trial court has subject matter jurisdiction over this type of controversy.  See Farmer v. Farmer, 172 Wn.2d 616, 624, 259 P.3d 256 (2011) ("Dissolution proceedings invoke the court's equitable jurisdiction.").

or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws.

RCW 2.28.150.

The Washington Supreme Court expounded on the implied powers to compel obedience during dissolution proceedings in Robinson v. Robinson, 37 Wn.2d 511, 516, 225 P.2d 411 (1950):

> It is inconceivable that a court in a [dissolution] proceeding can divide the property between the parties and yet have no power to make that division effective if the parties are recalcitrant. . . . If a court in equity could not enforce its decrees, obviously the court would be rendered impotent and we would have neither law nor order but every one could do as he or she pleased.  Of course, such a situation cannot be countenanced by the courts for a moment.

Kathryn's recalcitrance put the trial court in just such a situation.  The trial court ordered the sale of the marital home within 90 days of the entry of its dissolution order.  Over four years later and after three arbitrations, the appointment of a special master, and potential threat of removal by sheriff, Kathryn remains in the home in direct disobedience of the trial court's order.  As such, the trial court selected what, within its equitable discretion, it believed to be a suitable process for enforcing its order: a writ of restitution.

While it is true that the trial court did not follow the statutory process under forcible entry and unlawful detainer statute, ch. 59.12 RCW, it did not need to.  Title 59 RCW addresses landlord and tenant rights.  Here, until the family home is sold, the Coxes own the property as tenants in common.  As such, John is not Kathryn's landlord and cannot bring and unlawful detain action under ch. 59.12 RCW.  While the unlawful detainer statute, RCW 59.12.090, does allow a plaintiff landlord to seek a writ of restitution to restore the property to the plaintiff, there is no authority for the proposition

that a writ of restitution is only available under ch. 59.12 RCW. By entering a writ of restitution the trial court chose an equitable remedy that allowed it to effectuate its order using a process familiar both to the court as well as the sheriff's office serving and enforcing the writ.

B. <u>Contempt and Injunctive Relief</u>

Kathryn also argues that the trial court lacked authority to issue a writ of restitution: (1) outside the statutory process for contempt under RCW 7.21.040 and (2) outside the statutory provisions for injunctive relief under ch. 7.40 RCW. Both arguments fail. While the trial court found Kathryn in contempt,[4] as discussed above, the writ of restitution was properly issued under the trial court's equitable power to enforce the dissolution decree. The trial court did not issue the writ of restitution as a remedy for either contempt or for injunctive relief.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Coburn, J._          _Dwyer, J._

---

[4] We uphold a finding of contempt "as long as a proper basis can be found." <u>State v. Hobble</u>, 126 Wn.2d 283, 291, 892 P.2d 85 (1995). The record offers ample bases to find Kathryn in contempt. After disobeying multiple trial court orders and impeding the sale of the marital home for over four years, Kathryn's actions support the trial court's contempt finding.