IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 82231-4-I (Consolidated |
| | ) | with No. 82530-5-I) |
| ALEXANDRA LEIGH CARTWRIGHT, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| PATRICK RYAN FLYNN, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Alexandra L. Cartwright brought a motion for an order enforcing the parenting plan following Patrick R. Flynn's failure to engage in the treatment plan recommended pursuant to a court-ordered anger management evaluation. The trial court granted the motion, suspending Flynn's residential time with their child until he engaged in treatment. The court also awarded Cartwright attorney fees associated with bringing the motion. Flynn appealed the order enforcing the parenting plan and later filed a CR 60 motion to vacate it, alleging that the order was invalid for a number of reasons. The court denied the motion to vacate. Flynn later separately appealed the denial of his CR 60 motion and the two appeals were consolidated.

The terms of the order enforcing the parenting plan reduced Flynn's residential time in a manner not provided for in the dissolution of marriage act,[1] thus we reverse and remand for compliance with proper statutory procedures. Because we reverse the order to enforce the parenting plan, we need not reach the assignments of error as to the denial of the CR 60 motion to vacate.

FACTS

The marriage of Patrick Flynn and Alexandra Cartwright was dissolved following a trial. Cartwright sought restrictions on Flynn's residential time with their child under RCW 26.09.191. The trial court found the father's actions "troubling," but stated it could not "find that they rose to the level of domestic violence as define[d] by statute and case[ ]law." The judge also rejected the assertion that Flynn's conduct constituted stalking. The trial court found that Flynn's actions "did constitute abusive use of conflict and orders [RCW 26.09.]191 limitations as stated in the Parenting Plan" because the "Father's constant efforts to undermine the Mother as an unfit parent, calling CPS[2] without justification, efforts to groom and enlist the child in his favor over the Mother and his overall behavior as detailed above support a finding of abusive use of conflict under 3(b) of the Parenting Plan." An amended parenting plan was entered April 14, 2020.[3] The trial court found that "[t]he Father has a history of undermining Petitioner Alexandra Cartwright

---

[1] Ch. 26.09 RCW.
[2] Child Protective Services.
[3] The record suggests some original orders were entered on March 26, 2020 after the conclusion of the dissolution trial, but it is unclear as to the reason for entry of the amended parenting plan just over a week later. Amended child support worksheets were also entered on April 14, 2020. Neither party appears to take issue with any amendment that may have occurred with regard to the parenting plan.

('Mother'), showing aggression toward the Mother, not being supportive of her role as a parent and other behaviors detrimental to the child." As a result, the trial court ordered Flynn to obtain an evaluation for anger management through Anger Control Treatment & Therapies (ACT&T) within 60 days of entry of the final parenting plan. The order specified that Flynn was to engage in "any treatment" recommended by ACT&T after its anger management evaluation.

Cartwright was designated the primary residential parent with sole decision-making authority as to their daughter. Flynn was granted two overnight visits, every other weekend, and one mid-week evening visit. The parenting plan also specified, "If Father does not complete evaluation and/or treatment recommended, Mother may directly petition the Court, i.e. without mediation, to reduce Father's visitation with the Child." (Emphasis added.)

Flynn underwent an evaluation for anger management with ACT&T as ordered. The evaluator found that Flynn "clearly meets the Behavioral Definition of domestic violence used in the assessment." The evaluator also noted concerns regarding Flynn's "pattern of abusive and controlling behaviors." The evaluator determined that Flynn's "abusive use of conflict is indicative of a pattern of coercive control that goes beyond what an anger management intervention would be effective [sic]" and, as a result, the evaluator recommended that Flynn "attend and complete a DSHS[4] certified domestic violence perpetrator program" because "[t]eaching perpetrators of domestic violence only anger management skills often

---

[4] Department of Social and Health Services.

only improves their ability to control their partners with lower arousal and more predatory skill sets." (Emphasis omitted.)

The treatment plan was drafted on July 7, 2020 and contained the following requirements:

- Father was to participate in a level 2 DSHS-certified domestic violence intervention program that is a minimum of 39 weekly group sessions;

- Upon completion of the weekly group phase of the domestic violence intervention program, the father would enroll and successfully complete DV Dads. While enrolled in DV Dads, the father would participate in monthly monitoring sessions in the domestic violence intervention program;

- The father would comply with the provider's contract; and

- The father would abstain from all mood and mind altering drugs without a doctor's prescription including alcohol and marijuana for the entire length of the treatment.

In October 2020, Flynn sent an email to the trial court requesting "clarification" of its order requiring his compliance with ACT&T's treatment recommendations. Flynn's position was that the trial court only intended for him to comply with treatment recommended for anger management and essentially that the July 7 treatment plan was outside of the scope of what the court had ordered. He noted, that "if [the Judge] felt there was an issue of domestic violence he would have himself ordered such treatment."

Based on Flynn's email to the court and continued assertions to opposing counsel that the treatment plan exceeded the court's original directive, Cartwright

filed a motion to enforce the parenting plan by requiring the father to comply with the July 7 treatment plan from ACT&T. Additionally, and presumably based on the language contained in the underlying parenting plan allowing her to forego mediation, she asked the trial court to restrict Flynn's residential time until he completed the recommended treatment, and suspend his residential time altogether if he became non-complaint with treatment. Cartwright also sought an award of attorney fees for bringing the motion.

The court heard oral argument on the motion to enforce the parenting plan and Flynn appeared pro se. Flynn's sole argument at the hearing was that, since the trial court did not find he had committed domestic violence, he should not be required to participate in treatment for domestic violence. The court responded that the parenting plan was quite clear that Flynn was required to engage in "any treatment" recommended by the provider and had been warned "that if [he didn't] comply with the evaluation and treatment that [was] required under the parenting plan that [his] visitation may be suspended or reduced."

In granting the order enforcing the parenting plan, the trial court reiterated that the parenting plan required Flynn to "comply with any treatment as recommended by the evaluation." The court then specifically ordered the following based on the results of the ACT&T evaluation:

    a. Patrick Flynn must comply with the recommended treatment of 39 weekly group sessions of a level 2 D.S.H.S. certified domestic violence intervention program <u>before he can resume residential time with W[.] F[.]</u>. Patrick Flynn must enroll in the treatment program [within] 30 days of this order and provide proof to Mother's counsel.

    b. The treatment program entered into by Mr. Flynn should be with [ACT&T] as recommended by Dr. Monique Brown in her

   parenting evaluation report and he shall comply with the [ACT&T] provider contract.

c. Mr. Flynn must abstain from all mood and mind-altering drugs without a doctor's prescription including alcohol and marijuana for the entire length of treatment.

d. Mr. Flynn must enroll and successfully complete DV Dads with Mark Adams LMHC when he successfully complete[s] the weekly group [phase] of the DSHS certified domestic violence program with [ACT&T]. Mr. Flynn will then move to monthly monitoring sessions in his DV programs, where he shall remain until he successfully completes DV Dads with Mark Adams, LMHC.

e. Patrick Flynn must pay $4105.00 in attorneys' fees incurred by Alexandra Cartwright for having to bring this motion to enforce a parenting plan. Fees shall be paid to Luminosity Law PLLC within 60 days of entry of this order, or work out a payment plan [with] counsel.

(Emphasis added.) On December 23, 2020, Flynn filed a Notice of Appeal seeking review of the order enforcing the parenting plan.

Flynn did not engage in any treatment, which led to the suspension of his residential time under the order enforcing the parenting plan. Instead, Flynn retained counsel who, in February 2021, filed a motion to vacate the order enforcing the parenting plan under CR 60. Following oral argument, the trial court denied the motion to vacate the enforcement order. Flynn subsequently appealed the order denying his motion to vacate in April 2021. Both of Flynn's appeals have been consolidated here.

ANALYSIS

I.    Statutory Mechanisms to Change Residential Time with a Child

Chapter 26.09 RCW sets out the exclusive methods by which a court may change a parent's residential time with their child(ren) as provided in a parenting plan. Each contains its own requirements which are designed to afford parents

due process as to their parental rights. A parent has a fundamental civil right as to custody and control of their children, which cannot be infringed upon without complete due process safeguards. Halsted v. Sallee, 31 Wn. App. 193, 195, 639 P.2d 877 (1982).

"There is some overlap between the trial court's authority under RCW 26.09.187, to establish the terms of a parenting plan and its authority under RCW 26.09.191(3), to 'preclude or limit any provision of the parenting plan.'" In re Marriage of Chandola, 180 Wn.2d 632, 650, 327 P.3d 644 (2014) (quoting RCW 26.09.191). A court may restrict a parent's residential time with their child under RCW 26.09.191(3) if it finds a parent's conduct may have an adverse effect on the child's best interest and any of the factors set out within the statute are present.

The court imposed restrictions on Flynn's residential time based on a finding that he engaged in abusive use of conflict. However, even in light of that finding and an order to engage in treatment meant to address the behavior underlying the restriction, the parenting plan provided Flynn with one evening visit per week and residential time with their child every other weekend.

A. Self-Executing Conditions in a Parenting Plan

One of the means by which a court may change an existing residential schedule contained in a parenting plan is by including self-executing language in that original order. Typically, the court would identify a triggering condition and explain the consequence that would flow from that condition. In this scenario, the parties would have either agreed to the self-executing provision in the parenting plan through mediation, arbitration or settlement negotiations or the court would

craft such language after the conclusion of a trial. In any of those circumstances, the parents would have had notice and an opportunity to present argument on the issue, satisfying due process requirements.

While the transcript of proceedings suggests that the trial court believed the language in the parenting plan is self-executing, it is not. After finding that Flynn engaged in the abusive use of conflict under RCW 26.09.191, the court ordered him to obtain an anger management evaluation at ACT&T, provide the parenting evaluation from the dissolution to the ACT&T evaluator, and comply with "any treatment as recommended by the evaluation" from ACT&T. The order then states "If Father does not complete evaluation and/or treatment recommended, Mother may directly petition the Court, i.e. without mediation, to reduce Father's visitation with the Child." Compliance with treatment at ACT&T is the .191 restriction on his residential time. However, the reduction of Flynn's residential time under the plain language of the order is not automatic once the triggering condition (failure to comply with the evaluation or treatment) occurs, but depends on a "petition" from Cartwright.[5]

### B. Petition to Modify a Parenting Plan

The next way that the court may change a parent's residential time in a parenting plan is through a petition to modify under RCW 26.09.260 and .270. Before the court will conduct a hearing on the matter, the petitioner must submit an affidavit that demonstrates there is adequate cause to alter the existing plan.

---

[5] The record suggests that the parties both understood the reduction of Flynn's residential time was intended as a consequence of noncompliance, but regardless of the belief of the parties, or the court, we are tasked with reviewing the propriety of the ordering language.

RCW 26.09.270. A trial court may only modify a parenting plan if it finds that "a substantial change has occurred in the circumstances of the child or the nonmoving party and . . . the modification is in the best interest of the child and is necessary to serve the best interests of the child." RCW 26.09.260(1). The procedure for modification is very specific and requires consideration of certain criteria such that the court's discretion is limited. See RCW 26.09.260–.270. A modification is proper when new facts have arisen since the prior plan or the facts now alleged were unknown to the court at the time of entering the prior plan. RCW 26.09.260

Because the language in the parenting plan indicates that Cartwright "may directly petition the Court" in the event of Flynn's non-compliance with the evaluation or treatment, Flynn claims that the court essentially allowed a modification without following the proper statutory procedures. (Emphasis added.) This language appears to suggest the parenting plan directly contemplated Flynn's noncompliance, again likely believing it was self-executing, which would have rendered a modification unnecessary. As explained above, however, the provision was not self-executing. Cartwright did not present the court with a statutorily sufficient motion to modify under RCW 26.09.260(1), nor did the court treat it as such.

C. Contempt Proceedings

Finally, a court may adjust a parent's residential time in a parenting plan based on contempt proceedings under RCW 26.09.160. "'Failure to comply with a provision in a parenting plan or a child support order may result in a finding of

contempt of court.'" In re Marriage of Lesinski and Mieno, __ Wn. App 2d __, 506 P.3d 1277, 1284 (2022) (quoting RCW 26.09.184(7)). A parent seeking to compel another parent to comply with a parenting plan should move the court for a contempt order and must establish the contemnor's bad faith by a preponderance of the evidence. In re Marriage of Rideout, 110 Wn. App. 370, 376, 40 P.3d 1192 (2022). "A parent who refuses to perform the duties imposed by a parenting plan is per se acting in bad faith." Id. at 377. A parent is "deemed to have the present ability to comply with the order establishing residential provisions unless [they] establish[] otherwise by a preponderance of the evidence." RCW 26.09.160(4). Once the court finds that a parent has acted in bad faith as to their failure to comply with the parenting plan, "the court shall find the parent in contempt of court." RCW 26.09.160(2)(b). "Upon a finding of contempt, the court shall order" the contemnor to (1) provide additional visitation time to make up for the missed time, (2) pay the other parent's attorney fees and costs, and (3) pay the other parent a penalty of at least $100. RCW 26.09.160(2)(b); e.g. In re Marriage of Farr, 87 Wn. App. 177, 940 P.2d 679 (1997). Other than sending a parent to jail, punishment for contempt in this context is mandatory, not discretionary. Rideout, 110 Wn. App. at 376.

RCW 26.09.160(2)(a) states:

A motion may be filed to initiate a contempt action to coerce a parent to comply with an order establishing residential provisions for a child. If the court finds there is reasonable cause to believe the parent has not complied with the order, the court may issue an order to show cause why the relief requested should not be granted.

RCW 26.09.160 specifically requires a finding of bad faith before a contempt order may be entered and a parent sanctioned through loss of residential time, as

occurred here. "In determining whether the facts support a finding of contempt, the court must strictly construe the order alleged to have been violated, and the facts must constitute a plain violation of the order." In re Marriage of Humphreys, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995).

Here, the report of proceedings from the hearing on Cartwright's motion demonstrates that the court was aware of its authority to impose a remedial sanction, and the motion itself is clear that is what Cartwright was seeking. However, the court also noted: "I'm not in the business of just sanctioning people for not complying with my orders. What I want to see is a family who's willing to move forward and a Father who's willing to, you know, learn from the lessons that he learned and move forward." In addition to the fact that the court did not follow the proper statutory procedure for contempt under RCW 26.09.160, this excerpt appears to indicate that the court was not yet imposing a sanction for noncompliance, but rather clarifying its directive as Flynn requested and providing another opportunity to satisfy the treatment requirement before a remedial sanction would be ordered.

II.     Clarification, Enforcement and the Court's Inherent Authority

Parties may seek clarification of a court's order, which Flynn did when he emailed the court after he received the treatment recommendation from ACT&T. He believed that the treatment plan from ACT&T went beyond what the court ordered.[6]     The court treated his email inquiry like a motion to clarify, as

---

[6] Flynn also assigns error to the court's finding that he failed to comply with the evaluation and treatment requirement as set out in the parenting plan because the recommendation from ACT&T includes domestic violence and other forms of treatment. He avers this exceeds the scope

demonstrated by the transcript of the hearing on the motion to enforce wherein the judge explained that his order was to comply with "any treatment as recommended in the evaluation," including a domestic violence intervention program, DV Dads, and prohibitions on the consumption of alcohol or non-prescribed drugs during his treatment. The court used the hearing to clarify that when it ordered "any treatment" in the parenting plan, it truly meant any treatment that was recommended.

Further, a court may order enforcement of prior conditions or directives contained in other court documents. A party's first attempt to assure that the orders of the court are carried out need not be an action in contempt or a petition to modify. If the order enforcing parenting plan only incorporated the July 7 treatment plan from ACT&T and reiterated that Flynn must complete it, there would be no error. However, because paragraph 3(a) of the order enforcing states that Flynn must complete specific treatment "before he can resume residential time with W[.] F[.]," it deviated from the statutory procedures for changing a parent's residential time.

---

of the court's original requirement, but relies on language contained in the "Findings and Conclusions about a Marriage" (FFCL) that were entered on March 26, 2020 at the conclusion of the dissolution trial.

The FFCL, which Flynn did not appeal, merely recites the general rulings contained in the Parenting Plan. The order of the court that requires Flynn to act with regard to treatment is contained in the Parenting Plan, which is properly before us on appeal. The ordering language regarding compliance with "any treatment as recommended by the evaluation" is clear. (Emphasis added.)

Because the recommendations to which Flynn objects resulted from an anger management assessment from ACT&T, after consideration of the precise collateral materials explicitly noted by the court, they do not exceed the scope of the court's order.

- 12 -

During oral argument at this court, Cartwright claimed that the trial court acted within its inherent powers in effectuating the ordering language contained within the parenting plan. RCW 2.28.150 states:

> When jurisdiction is, by the Constitution of this state, or by statute, conferred on a court or judicial officer all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws.

(Emphasis added.) However, even the statute setting out the court's inherent authority recognizes the interplay with other related statutes. "A court may only resort to its inherent power if there is no applicable contempt statute or it makes a specific finding that statutory remedies are inadequate." Farr, 87 Wn. App. at 187. Here, RCW 26.09.160 was the applicable contempt statute for the matter before the trial court and the record demonstrates that the court did not make any findings that existing statutory remedies, such as a properly framed petition to modify, were inadequate.

Though Cartwright claims that the trial court acted within its inherent powers, this was not the case and would be improper here. A recent opinion from this court, In re Marriage of Cox, provides an example of a context wherein a court necessarily resorted to it inherent power to enforce its orders. 20 Wn. App. 2d 594, 501 P.3d 155 (2021). In Cox, the trial court utilized its inherent power to enter a writ of restitution against one party in a dissolution when the wife repeatedly refused to vacate the family home so that the community asset could be sold as ordered in the dissolution. Id. at 596–97. However, Cox is distinguishable because the court had directed the wife to vacate the home by a date certain in

the original dissolution orders regarding the property distribution. Id. The writ of restitution at issue in Cox was merely another attempt to command compliance with a previous order; it did not otherwise disturb the property distribution or modify its previous directive. There was no need for the trial court here to resort to its inherent authority as it did in Cox; particularly when no action had been taken yet as to Flynn's noncompliance and there were statutory procedures, modification or contempt action under RCW 26.09.160, which could provide an adequate remedy. Accordingly, we reject Cartwright's argument that this was a proper exercise of the trial court's inherent authority.

The language contained in the order enforcing the parenting plan constitutes an abuse of discretion because the court misinterpreted the law regarding its inherent authority and the statutory remedies for noncompliance where the language in the original order is not self-executing. The trial court should have upheld the procedural requirements for either contempt proceedings or a modification of the parenting plan as set out in the respective statutes. Flynn was prejudiced by this procedural lapse, particularly as he was representing himself at the time. Proceeding under the proper statutory framework provides notice to the party facing a sanction as to the standards they must meet and the process they can expect. Because the means by which the court attempted to resolve this matter rested upon a misinterpretation of the law, it constitutes an abuse of discretion. Accordingly, we reverse the order enforcing parenting plan.[7]

---

[7] In light of our reversal of the order enforcing parenting plan, we need not reach Flynn's other assignments of error as to this order, including a number of challenges that were never presented to the trial court and raised for the first time on appeal.

III.     Attorney Fees

Finally, RCW 26.09.140 allows this court to award fees to the prevailing party, if merited.  The relevant portion of RCW 26.09.140 states, "Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs."  While both Flynn and Cartwright request fees, and properly provide both authority and some argument for their respective requests, we decline to award fees to either party.

Reversed and remanded.

WE CONCUR:

_____

_____          _____

---

Further, and for similar reasons, we do not reach the assignments of error associated with his later appeal of the denial of his CR 60 motion to vacate the order enforcing parenting plan. This includes Flynn's challenge to the trial court's denial of his request for attorney fees based on his unsuccessful motion to vacate.